2008 VT 60

## Peter M. Mollica and Sandra H. Mollica v. Division of Property Valuation and Review

[955 A.2d 1171]

No. 06-410

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed May 2, 2008

*Christopher D. Roy* of *Downs Rachlin Martin PLLC*, Burlington, for Plaintiffs-Appellees.

*William H. Sorrell*, Attorney General, and *Stephen W. Gould* and *Danforth Cardozo, III*, Assistant Attorneys General, Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** The Vermont Department of Taxes' Division of Property Valuation and Review (PVR) appeals from a superior court decision reversing PVR's determination that part of a parcel of land owned by Peter and Sandra Mollica was no longer eligible to be enrolled in a program designed to give tax breaks to landowners who maintain their property as farm and forest lands. We affirm.

¶ 2. Landowners operate a Christmas tree farm on a 72.6-acre parcel of land that they purchased in two separate transactions in 1978 and 1981. Since 1988, they have enrolled all but two acres of their property in a tax-abatement program of some type. In 1996, the Mollicas enrolled their property, excluding a two-acre house

site, in the Agricultural and Managed Forest Land Use Value Program, 32 V.S.A. §§ 3751-3763, commonly referred to as the current-use program. In 2000, in furtherance of their expansion of the retail component of their Christmas tree operation, the Mollicas converted a building known as the "Grist Mill," which they had been using as a sales office, into a guest house, and began using a refurbished mobile home, deemed the "Christmas Cottage," as the new sales office and warming hut for customers during the Christmas tree season. The Mollicas also used the Christmas Cottage occasionally during the off-season as a rented guest house.

¶ 3. The Mollicas' use of the Christmas Cottage is the focus of this appeal. In 2003, PVR notified the Mollicas that two buildings on their enrolled property, later identified as the Grist Mill and the Christmas Cottage, were being used as dwellings and thus were not eligible for enrollment in the current-use program. Accordingly, PVR excluded from the program the buildings and two acres of land for each building. The Mollicas appealed this determination to the PVR director. While the appeal was pending, PVR sent the Mollicas a notice of discontinuance of their entire enrolled parcel from the program based on their failure to provide updated maps, and assessed a land-use-change tax on the four acres associated with the Grist Mill and Christmas Cottage.

¶ 4. Following an evidentiary hearing, the director determined that the Mollicas were using the Grist Mill and Christmas Cottage as rental property, which was "development" under the applicable statutory provision, thereby precluding enrollment of the buildings in the current-use program. The director determined, however, that only one acre of land should be associated with each building, and instructed PVR to reinstate 68.6 acres of the Mollicas' property into the program. The Mollicas appealed that decision to the superior court, which held a de novo evidentiary hearing.

¶ 5. Following that hearing, the court reversed the director's decision, concluding that the Grist Mill was not situated on enrolled property and that the Mollicas were using the Christmas Cottage exclusively as a farm building during the Christmas tree season. The court determined that the Mollicas' occasional use of the Christmas Cottage as a rental property during the off-season did not exclude the property from the current-use program under the applicable statute. On appeal, PVR argues that the superior court erred by failing to give deference to the director's decision

and by construing the relevant statutory provisions to allow enrollment of the Christmas Cottage into the current-use program.

¶ 6. We first address PVR's standard-of-review argument. PVR contends that the superior court was compelled to uphold the director's decision because the decision was supported by the facts and not contrary to the law. In PVR's view, the superior court improperly substituted its judgment in place of the director's reasonable interpretation and implementation of a statute within the agency's legislatively assigned area of expertise. According to PVR, this amounts to reversible error, even though the applicable statute provides for de novo review in the superior court.

¶ 7. At the outset, in considering the proper standard of review, we recognize that the superior court did not indicate either way whether it was required to give any deference to the director's decision. To the extent that this omission may be considered erroneous, it is inconsequential because, notwithstanding the de novo evidentiary hearing in the superior court, we directly review the director's legal determination anew here. See *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 195, 733 A.2d 733, 738 (1999) ("Where there is an intermediate level of appeal from an administrative body, we review the case under the same standard as applied in the intermediate appeal.").

¶ 8. In relevant part, 32 V.S.A. § 3758(a) provides that appeals from the director's decisions concerning the current-use program proceed "in the same manner and under the same procedures" as tax appeals from a board of civil authority. Such appeals to the state appraiser or the superior court proceed "de novo." *Id.* § 4467. Although de novo review under § 4467 presumes the validity of the taxing authority's decision only "until the taxpayer produces some evidence to the contrary," *Town of Victory v. State*, 2004 VT 110, ¶ 18, 177 Vt. 383, 865 A.2d 373, this does not mean that the court ultimately owes no deference to the decision of the administrative agency. For example, in considering the superior court's de novo review of the Department of Forests, Parks and Recreation's determination that a taxpayer was not in compliance with a forest-management plan, we noted that "we treat decisions within the Department's area of expertise with substantial deference." *Jones v. Dep't of Forests, Parks & Recreation*, 2004 VT 49, ¶ 7, 177 Vt. 81, 857 A.2d 271; see also *Town*

88

*of Killington v. Dep't of Taxes*, 2003 VT 88, ¶ 5, 176 Vt. 70, 838 A.2d 91 (noting that although the applicable statute provided for de novo review of an administrative decision establishing the methodology for implementing a statute taxing property to support public school education, the statute plainly gave the administrative agency discretion in choosing a methodology, which is presumed to be valid absent "a clear and convincing showing to the contrary" (quotation omitted)).

■ ■ ¶ 9. Generally, we defer to administrative agencies interpreting statutes within their legislatively delegated expertise. *Town of Killington v. State*, 172 Vt. 182, 192, 776 A.2d 395, 403 (2001) (noting this Court's rule that "the interpretation of a statute by the administrative body responsible for its execution will be sustained on appeal absent compelling indication of error" (quotation omitted)). In this case, the applicable statute provides that "the director shall determine whether previously classified property is still eligible for use value appraisal." 32 V.S.A. § 3756(f). Moreover, when a statutory tax exemption is ambiguous, we generally strictly construe the exemption against the taxpayer. *Ice Ctr. of Washington W., Inc. v. Town of Waterbury*, 2008 VT 37, ¶ 4, 183 Vt. 616, 950 A.2d 464 (mem.).

■ ■ ¶ 10. On the other hand, as PVR concedes, the legislatively established current-use program is a remedial statute designed for the express purpose of alleviating the tax burden on landowners who promise to maintain their land in agricultural or forest use. See *Wilk v. Wilk*, 173 Vt. 343, 346, 795 A.2d 1191, 1193 (2002) (noting "principle that remedial statutes ought to be liberally construed"); cf. *LSP Ass'n v. Town of Gilford*, 702 A.2d 795, 798 (N.H. 1997) (describing New Hampshire tax-abatement statutes as "remedial in nature"). Indeed, the statute explicitly provides that landowners who meet the statutory criteria "shall be eligible for use value appraisal." 32 V.S.A. § 3755(a). "[O]ur rule that tax statutes should be strictly construed against the party claiming exemption must be tempered by the paramount concern that statutes be construed 'reasonably so as not to defeat their purpose.' " *Chamberlin v. Vt. Dep't of Taxes*, 160 Vt. 578, 580, 632 A.2d 1103, 1104 (1993) (quoting *In re R.S. Audley, Inc.*, 151 Vt. 513, 516, 562 A.2d 1046, 1049 (1989)); see also *Herrick v. Town of Marlboro*, 173 Vt. 170, 177, 789 A.2d 915, 920 (2001) (same).

¶ 11. In short, this case does not call for the substantial deference due in *Jones*, where the administrative agency was acting within a narrow area of technical expertise, or *Killington*, where the Legislature had given the administrative agency wide discretion to establish a methodology for implementing the statute in question. While we owe deference to the PVR director in this case, that deference is tempered by our paramount concern of construing the statute consistently with its explicitly stated purposes.

¶ 12. With this standard in mind, we review the merits of PVR's appeal. PVR contends that the director reasonably interpreted the relevant statutory provisions in determining that the Mollicas' off-season use of the Christmas Cottage amounted to "development" that precluded them from enrolling that property in the current-use program. PVR further contends that the superior court unreasonably construed the relevant statutory provisions in determining that the Christmas Cottage was a "farm building" entitled to enrollment in the program. After examining the language of the applicable statute and considering its explicitly stated purposes, we agree with the superior court that the director erred in determining that the statute precluded the Mollicas from continuing the Christmas Cottage in the current-use program.

¶ 13. The statute explicitly states that it is intended, among other things, "to encourage and assist the maintenance of Vermont's productive agricultural and forest land" and "to prevent the accelerated conversion of these lands to more intensive use by the pressure of property taxation at values incompatible with the productive capacity of the land." 32 V.S.A. § 3751. Toward that end, any agricultural or forest lands meeting the statutory criteria "shall be eligible for use value appraisal." *Id.* § 3755(a). The parties do not dispute that the Mollicas' Christmas tree operation maintains agricultural land eligible for enrollment in the current-use program. The issue is whether the Mollicas' use of the Christmas Cottage as a rental property took that structure and an acre of surrounding land out of the program.

¶ 14. The director determined that the Mollicas' use of the Christmas Cottage amounted to "development," as defined in § 3752(5), thereby making the building subject to a land-use-change tax and discontinuance in the current-use program. That definition states, in relevant part, that development does not

include the construction or relocation of a building for farming or forestry purposes, but does "include the subsequent commencement of a use of that building . . . for other than farming, logging or forestry purposes." According to the director, the Mollicas "subsequently commenced" use of the Christmas Cottage as a rental property, and thus the property was subject to a land-use-change tax as a "development" under § 3752(5) and no longer eligible for enrollment in the current-use program.

¶ 15. Before analyzing the director's interpretation of the statute, we examine the material facts in this case, which are largely undisputed. During the five-to-six-week selling season, the Christmas Cottage serves exclusively as a sales office, reception area, and warming hut for the Mollicas' Christmas tree business, which operates on land enrolled in the current-use program. At the cottage, customers pay for trees and other items, warm themselves, use the bathroom, and wait for rides to take them to the trees. These uses are essential to the Mollicas' business, particularly since they expanded the retail sales aspect of the business in 2000.

¶ 16. During the off-season, the Mollicas allow certain uses of the Christmas Cottage. At times, agricultural workers stay there. The Mollicas also allow guests to stay at the cottage, some for free. Occasionally, they rent out the cottage to paying guests. The record is not entirely clear, but it appears that the cottage was rented out to sixteen people in 2004. On the other hand, in the same year, 6,000 people visited the farm to purchase their Christmas trees. The director indicated that the Mollicas had collected nearly $40,000 in rental income during a four-year period, but it is unclear how much of that income was generated by the principal guest house — the Grist Mill — and how much by the occasional rental of the Christmas Cottage. In contrast, the income generated by the Christmas tree operation was approximately $341,000 in 2004.

■ ■ ¶ 17. In light of these facts, we conclude that the director erred in determining that the statute compelled discontinuance of the Christmas Cottage from the current-use program. The cottage is not a "development," as defined in § 3752(5), because it is used exclusively for farming uses during the entire, albeit short, selling season. Nor can the occasional off-season use of the cottage as a rental property be considered the "subsequent commencement" of

a nonfarming use so as to bring the property within the definition of "development" in § 3752(5). The term "subsequent commencement" does not imply an annual off-season use that has no impact on the exclusive seasonal use for farming. Rather, it implies an abandonment of a farming use for a nonfarming use so as to trigger imposing a land-use-change tax. The record plainly demonstrates here that the Mollicas did not abandon the farming use of the building.

¶ 18. Nor does the definition of the term "farm buildings" in § 3752(14) compel discontinuance of the Christmas Cottage in the current-use program. In relevant part, § 3752(14) defines farm buildings as all buildings "actively used" by farmers as part of a farm operation. That is certainly the case here. The definition also provides, however, that farm buildings "shall not include any dwelling other than a dwelling in use during the preceding tax year exclusively to house one or more farm employees." Id. § 3752(14). We conclude that this part of the definition of "farm buildings" does not exclude the Christmas Cottage from the current-use program. As noted, during the entire agricultural season, the Christmas Cottage is used actively and exclusively for farm operations, and is not set up as a dwelling. While the cottage is rented out and used as a dwelling occasionally during the off-season, it is not a year-round dwelling and is never a dwelling during the agricultural season. The reason that the cottage is not a farm building used exclusively as a dwelling for farm workers is that it is not a dwelling at all when used as a farm building during the agricultural season. Therefore, notwithstanding its occasional off-season use as a rental property, the cottage is not a dwelling within the meaning of the definition of "farm buildings" in § 3752(14).

¶ 19. As the superior court stated, the Mollicas use the Christmas Cottage as part of their farming operation to the fullest extent possible during their seasonal farming operation. The Legislature was undoubtedly aware of the seasonal nature of farming operations, and yet nothing in the statute compels discontinuance in the current-use program of structures used exclusively for farming during the farming season but occasionally for nonfarming purposes during the off-season.

¶ 20. Construing the statutory definitions to compel discontinuance of the Christmas Cottage from the current-use

program under the facts of this case would be inconsistent with the remedial statute's explicitly stated purposes to protect farming and forestry uses by providing tax incentives for farmers to maintain those uses. Nothing in the record suggests that the Mollicas' occasional off-season use of the Christmas Cottage has any negative impact on preservation of their agricultural lands or on use of the cottage during the entire agricultural season exclusively for farming purposes. Accordingly, the director's interpretation of the statute to impose a land-use-change tax on the Mollicas is erroneous. We may not substitute our policy judgments for those of the administrative agency assigned by the Legislature to implement a particular statute, but we will not approve an agency's statutory interpretation that runs counter to the Legislature's explicitly stated purposes for that statute. See *Town of Killington*, 172 Vt. at 189, 767 A.2d at 401 (stating that statutory language will not be construed so as to undermine the legislative purpose underlying the statute).

*Affirmed.*