Goodrum et. al. v. State of Vermont, No. 440-7-12 Wrcv (Teachout, J. Feb. 19, 2014).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Windsor Unit** | **Docket No. 440-7-12 Wrcv** |

**GARFIELD GOODRUM and LUCILLE GOODRUM,**

      **Appellants**

**v.**

**STATE OF VERMONT, DEPARTMENT OF TAXES, PROPERTY VALUATION AND REVIEW DIVISION,**

      **Appellee**

### DECISION
### MOTION FOR SUMMARY JUDGMENT
### AND CROSS MOTION FOR SUMMARY JUDGMENT

This matter is before the court on the State of Vermont, Department of Taxes, Property Valuation and Review Division's ("Appellee's" or the "Department's") Motion for Summary Judgment, filed July 18, 2013, and Garfield and Lucille Goodrum's (collectively, "Appellants'" or the "Goodrums'") Cross Motion for Summary Judgment, filed October 4, 2013.

Appellants own property at 631 Town Hill Road, Reading, Vermont that includes several buildings and undeveloped forest land. Their forest land is enrolled in the UVA program. They lease four barns and two sheds (the "Farm Buildings") on non-forest land on their property to Turtle Hill Farm of Vermont Sanctuary, Inc. ("THF"), a nonprofit corporation they formed in 2008.

THF rescues, rehabilitates, and adopts out animals such as guinea pigs, horses, rabbits, and chickens. THF uses the Farm Buildings to house, feed, manage, and otherwise care for the animals.

THF obtains its animals from individuals and shelters that can no longer care for them. Many of the animals THF receives into its care are in states of neglect that require significant medical care and labor. THF also participates in emergency rescues. For example, in 2011, THF cared for 30 rabbits seized from an animal hoarder.

THF adopts out an average of 25 animals a year, mostly guinea pigs and rabbits. If an animal is sick or otherwise unsuitable for adoption, he or she receives permanent sanctuary at THF.

Lucille Goodrum is the executive director of THF. She has two decades of experience in the field of animal protection and rehabilitation.

THF received $15,020 in donations in 2009-2010 and $18,869 in donations in 2011 and 2012 to cover its operations including hay, feed, medical treatment, and building maintenance. Most of the donations are from the Goodrums.

In August 2010, Appellants attempted to enroll the Farm Buildings in Vermont's Use Value Appraisal ("UVA") Program.[1] Property qualified for the UVA Program is taxed at a lower rate than ordinary land. In this case, the Farm Buildings would be exempt from any taxes if they qualified for the UVA Program. The Department of Taxes determined that the Farm Buildings did not qualify for the UVA Program because they are not leased to or operated by a farmer as defined by 32 V.S.A. § 3752.

Appellants appealed to the Director of the Division of Property Valuation and Review (PVR) who issued a Determination on June 21, 2012 that the Farm Buildings do not qualify for the UVA Program.

Appellants appealed to this Court. The Vermont Department of Taxes, on behalf of PVR, moved for summary judgment on July 17, 2013, arguing that the undisputed facts support the Director's conclusion that the Farm Buildings should not be enrolled in the UVA Program. Appellants opposed this motion on October 4, 2013, and cross-moved for summary judgment, countering that THF's activities constitute farming and, therefore, the Farm Buildings should qualify for the UVA Program.

On October 11, 2013, Appellee opposed Appellants' cross motion, reasserting that THF does not satisfy the statutory definition of "farmer." Appellants replied on November 8, 2013 that Appellee had misinterpreted the relevant statutes and evidence and that a similar farm near Appellants' property has qualified for the UVA Program. By Reply dated November 14, 2013, Appellee argued that the similar farm identified by Appellants may no longer qualify for the UVA Program and that, therefore, its previous enrollment should be irrelevant here.

Oral argument was heard on the summary judgment motions on January 16, 2014. Appellants represented themselves, and the Department was represented by Attorney Barbara G. Ripley.

After the hearing, on February 7, 2014, Attorney Ripley filed a letter with the Court that appears to provide factual information. It has not been read or considered by the Court for two reasons: it is not appropriate to present either facts or legal argument in the form of a letter, and summary judgment motions are to be decided based on undisputed facts in the record provided pursuant to the procedures in V.R.C.P. 56.

---

[1] This dispute involves only the Farm Buildings. Other parts of Appellants' property are already enrolled in the UVA Program, and Appellee does not dispute that those areas qualify for the program.

## ANALYSIS

To prevail on a motion for summary judgment, a movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). In ruling on a motion for summary judgment, the court will take "all allegations made by the nonmoving party as true." *Richart v. Jackson*, 171 Vt. 94, 97 (2000). Here, the material facts are not disputed. The issue is the legal one of whether THF qualifies as a "farmer" under the applicable statutory definition. Resolution of this issue determines whether the Farm Buildings qualify for enrollment in the UVA Program.

The UVA Program "is designed to provide a tax incentive for landowners to maintain their agricultural or forest land by taxing it at its current use value rather than at the higher 'best use' value." *Jones v. Dep't of Forests, Parks and Recreation*, 2004 VT 49, ¶ 2, 177 Vt. 81. One of its specific goals is "to encourage and assist the maintenance of Vermont's productive agricultural and forest land." 32 V.S.A. § 3751.

If an individual or entity satisfies the definition of "farmer" in 32 V.S.A. § 3752(7), "all farm buildings and other farm improvements which are actively used by [the] farmer as part of a farming operation, are owned by [the] farmer or leased to [the] farmer under a written lease for a term of three years or more," 32 V.S.A. § 3752(14), can qualify for the UVA Program. 32 V.S.A. § 3755. Whether THF qualifies as a "farmer" is the central dispute in this matter. Appellants lease the Farm Buildings to THF, and thus claim eligibility for enrollment of the buildings in the UVA.[2]

32 V.S.A. § 3752(7) defines a farmer as

a person:

(A) who earns at least one-half of the farmer's annual gross income from the business of farming as that term is defined in Regulation 1.175-3 issued under the Internal Revenue Code of 1986; or

(B)(i) who produces farm crops that are processed in a farm facility situated on land enrolled by the farmer in a use value appraisal program or on a housesite adjoining the enrolled land;

(ii) whose gross income from the sale of the processed farm products pursuant to subdivision (i) of this sub-division (B), when added to other gross income from the business of farming as used in subdivision (A) of this subdivision (7), equals at least one-half of the farmer's annual gross income; and

---

[2] Appellants themselves do not need to meet the statutory definition of "farmer." Their Farm Buildings qualify for enrollment if they are leased to a farmer.

(iii) who produces on the farm a minimum of 75 percent of the farm crops processed in the farm facility

32 V.S.A. § 3752(7).

Generally, courts defer to administrative agencies when agencies are interpreting statutes within their area of expertise. *Town of Killington v. Dep't of Taxes*, 2003 VT 88, ¶ 5, 176 Vt. 70. However, "the legislatively established [UVA Program] is a remedial statute designed for the express purpose of alleviating the tax burden on landowners who promise to maintain their land in agricultural or forest use." *Mollica v. Div. of Prop. Valuation and Review*, 2008 VT 60, ¶ 10, 184 Vt. 83. Because of the program's remedial purpose, the Court's "deference is tempered by [its] paramount concern of construing the statute consistently with its explicitly stated purposes." *Id.* ¶ 11. Therefore, it is the role of the Court to construe the legal definition of "farmer" as it pertains to THF.

The Department argues that THF does not qualify as a farmer because THF does not earn "at least half of its income from the business of farming." The Department asserts that the plain language of 32 V.S.A. § 3752(7)(A) says that the "business of farming" "is defined in Regulation 1.175-3 issued under the Internal Revenue Code of 1986," (32 V.S.A. § 3752(7)(A)), and that only that specific regulation applies. That regulation states that "[a] taxpayer is engaged in the business of farming if he cultivates, operates, or manages a farm **for gain or profit**, either as owner or tenant." 26 C.F.R. § 1.175–3 (emphasis added). According to Appellee, THF cannot be considered a "farmer" because it has no gain or profit whatsoever.

Appellants argue that THF actually receives all of its income from the business of farming because its only income is donations that support its rescue and rehabilitation of animals. They further assert that focusing on only 26 C.F.R. § 1.175–3 is improper, and that the Court should also consider 26 C.F.R. § 1.183–2, which identifies nine factors for determining "whether an activity is engaged in for profit." 26 C.F.R. § 1.183–2(b). Appellants claim that five of these nine factors support their position that THF operates "a farm for gain or profit." 26 C.F.R. § 1.175–3.[3]

Although 32 V.S.A. § 3752(7) does not specifically state that the factors from 26 C.F.R. § 1.183–2(b) are relevant for determining if a person qualifies as a "farmer," the Court will nonetheless consider them, keeping in mind that the purpose of C.F.R. § 1.183 is to distinguish between activities for profit and not for profit for purposes of qualifying expenses as allowable deductions from income for purposes of income taxation.

First, "[t]he fact that the taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity is

---

[3] Appellants also argued that the Farm Buildings should qualify for the UVA Program because a horse farm near Appellants' property is a part of the program and the operation of a horse farm is similar to THF's rescue and rehabilitation of animals. This argument is unsuccessful. The specifics of how the horse farm identified by Appellants qualified for the UVA Program and whether it should still be a part of the program are not relevant here.

4

engaged in for profit." 26 C.F.R. § 1.183–2(b)(1). Here, THF has been incorporated as a nonprofit entity since 2008. It maintains thorough records, which include surrender papers for the animals it acquires and detailed accounts of income and expenditures. THF is run in a businesslike manner.

Second, "[p]reparation for the activity by extensive study of its accepted business, economic, and scientific practices, or consultation with those who are expert therein, may indicate that the taxpayer has a profit motive where the taxpayer carries on the activity in accordance with such practices." 26 C.F.R. § 1.183–2(b)(2). It is undisputed that Lucille Goodrum has extensive experience caring for and rehabilitating animals. The facts do not show, however, that THF "has a profit motive." The Goodrums' motivation is for the benefit of the animals rather than to generate income. The expenses of THF are paid by the Goodrums' own donations to it, and not from the generation of income.

Third, "[t]he fact that the taxpayer devotes much of his personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit." 26 C.F.R. § 1.183–2(b)(3). While considerable time and effort are spent on the mission of THF, it is not out of an "intention to derive a profit" in the traditional sense of generating income.

Fourth, whether a taxpayer expects "that assets used in [the] activity may appreciate in value" is also relevant for determining if the taxpayer is attempting to make a profit. 26 C.F.R. § 1.183–2(b)(4). Appellants assert that THF attempts to rehabilitate injured or unhealthy animals, thus making them more valuable. They further claim that, under its lease agreement with Appellants, THF is expected to maintain and repair the Farm Buildings, increasing their value as well. While there is value to promoting the health and adoptability of animals, and use of buildings may help them to maintain property value, neither of these effects produce economic "gain or profit" to THF, the entity at issue.

Fifth, "[t]he fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable." 26 C.F.R. § 1.183–2(b)(5). There are no facts on this point, but the factor is based on an assumption of an intent to create a profit, which is not shown on the part of THF.

Sixth, "where losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status such continued losses, if not explainable, as due to customary business risks or reverses, may be indicative that the activity is not being engaged in for profit." 26 C.F.R. § 1.183–2(b)(6). Here, Appellants have made no suggestion that THF is profitable, nor that THF will someday become profitable

Seventh, "[t]he amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used in

the activity, may provide useful criteria in determining the taxpayer's intent." 26 C.F.R. § 1.183–2(b)(7). THF does not have any profits, yet pays for food and supplies to rehabilitate its animals. It meets these expenses with donations primarily from the Goodrums. While, as the Goodrums argue, there is "gain" involved, it is gain to the health and wellbeing of the animals, and not to the economic productivity of the entity THF.

Eighth, "[t]he fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit." 26 C.F.R. § 1.183–2(b)(8). Here, THF receives donations to support its rehabilitation of animals. It does not receive any income from other sources.

Ninth, "[t]he presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved." 26 C.F.R. § 1.183–2(b)(9). In this case, although all of THF's activities may not be enjoyable, especially decisions to have unhealthy animals put down, the evidence indicates that Appellants operate THF because of their love of animals. Indeed, at the January 16, 2014 hearing, Appellants specifically explained how running THF is an extension of their personal feelings regarding animals. Therefore, for Appellants, operating THF is largely a personal endeavor, despite the reality that some of the activities inherent in that operation are not particularly recreational.

Finally, 26 C.F.R. § 1.183–2(b) explains that "[i]n determining whether an activity is engaged in for profit, all facts and circumstances with respect to the activity are to be taken into account. No one factor is determinative in making this determination." 26 C.F.R. § 1.183–2(b).

In this case, the fact that almost all of THF's donations have been made by Appellants, the creators of THF, weighs heavily against THF being considered an entity operating for gain or profit. These donations are reallocations of Appellants' money into a nonprofit organization that they wholly control. They are not gain or profit in the traditional sense of either generation of money or increase in capital value. 26 C.F.R. § 1.183–2(a) explains that "[i]n determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent." 26 C.F.R. § 1.183–2(a). Here, those objective facts indicate that THF, a nonprofit organization that derives nearly all of its income from donations made by its creators, is not operating for gain or profit.

Appellants argue that the purpose of the UVA is to promote a working landscape and that the activities of THF fulfill this goal. Many owners use their land and buildings in similar ways. The Legislature has defined a specific category of landowners who qualify for the UVA according to defined criteria. Upon consideration of the undisputed facts and legal arguments, the Court concludes that THF does not meet the standard of managing its activities "for gain or profit." Therefore, it does not qualify as a "farmer"

6

under 32 V.S.A. § 3752(7), and Appellants are not eligible for enrollment of their Farm Buildings in the UVA.

Accordingly, the Department's summary judgment motion must be granted, and Appellants' cross motion must be denied.

<u>ORDER</u>

Appellee's Motion for Summary Judgment is hereby *granted*. Appellants' Cross Motion for Summary Judgment is hereby *denied*.

Dated at Woodstock, Vermont, this 13th day of February, 2014.

Honorable Mary Miles Teachout
Superior Court Judge