2014 VT 128

## Garfield Goodrum and Lucille Goodrum v. Vermont Department of Taxes

[111 A.3d 1281]

No. 14-102

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Maley, Supr. J., Specially Assigned**

Opinion Filed November 21, 2014

*Garfield Goodrum* and *Lucille Goodrum*, Pro Ses, Reading, Plaintiffs-Appellants.

*William H. Sorrell*, Attorney General, and *Barbara G. Ripley* and *Mary L. Bachman*, Assistant Attorneys General, Montpelier, for Defendant-Appellee.

¶ 1. **Dooley, J.** Garfield and Lucille Goodrum appeal the superior court's decision granting summary judgment to the Vermont Department of Taxes' Division of Property Valuation and Review (PVR) and denying the Goodrums' cross-motion for summary judgment on their claim that their farm buildings are eligible for enrollment in Vermont's Use Value Appraisal (UVA) Program. We affirm.[1]

¶ 2. The undisputed facts are as follows. The Goodrums own 41.54 acres in Reading, Vermont. All but two acres of land surrounding

[1] PVR moved to strike certain documents from the Goodrums' supplemental printed case because they were not in the record below. We agree that the documents were not in the record below, but they are irrelevant to the issue before us. For these reasons, the records played no part in our decision and their presence in the printed case is harmless. We deny the motion to strike.

their home is enrolled in the UVA Program as undeveloped forest land. In 2008, the Goodrums formed Turtle Hill Farm of Vermont Animal Sanctuary, Inc. (THF), a nonprofit corporation whose mission is to rescue, rehabilitate, foster, and adopt out animals, including horses, chickens, rabbits, and guinea pigs. The Goodrums lease four barns and two sheds to THF, which the organization uses to house, feed, manage, and otherwise care for the animals. THF is funded almost exclusively by donations, which it uses to cover its operating expenses. Most of the donations come from the Goodrums.

¶ 3. In 2010, the Goodrums applied to enroll the barns and sheds leased to THF in the UVA Program, which would exempt the buildings from property taxation, but PVR determined that the buildings were ineligible. The Goodrums appealed to the Director of PVR[2], who also determined that the buildings were ineligible. The Goodrums then appealed to the superior court, and both parties moved for summary judgment. The court granted PVR's motion, concluding that the buildings are not eligible for enrollment because THF does not operate for gain or profit and is therefore not a farmer under 32 V.S.A. § 3752(7). The Goodrums filed this appeal.

¶ 4. "We review summary judgment rulings de novo, using the same standard as the trial court." *Demag v. Better Power Equip., Inc.*, 2014 VT 78, ¶ 9, 197 Vt. 176, 102 A.3d 1101. Summary judgment will be granted when, viewing the evidence in the light most favorable to the nonmoving party, "there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quotation omitted); see V.R.C.P. 56(a).

¶ 5. The material facts are undisputed, and we need to determine only a single legal question: whether THF qualifies as a farmer under 32 V.S.A. § 3752(7). We hold that THF does not qualify as a farmer for the purposes of the UVA Program. It does not operate for gain or profit because it is not profit-driven and its revenue is derived primarily from the Goodrums' own donations.

---

[2] It is not clear why the appeal went to the Director of PVR. The statute provides that the appeal goes to the Commissioner of Taxes. 32 V.S.A. § 3758(a). The Goodrums raised no claim with respect to this appeal route. In fact, the decision was made by a hearing officer for the Department of Taxes and approved by the Director.

¶ 6. ■ We begin our discussion with an overview of the statutory and regulatory scheme. The UVA Program "is designed to provide a tax incentive for landowners to maintain their agricultural or forest land by taxing it at its current use value rather than the higher 'best use' value." *Jones v. Dep't of Forests, Parks & Recreation*, 2004 VT 49, ¶ 2, 177 Vt. 81, 857 A.2d 271; see 32 V.S.A. § 3752(12) ("With respect to farm buildings, 'use value appraisal' means zero percent of fair market value."). The UVA Program accepts as eligible for enrollment

> all farm buildings and other farm improvements which are actively used by a farmer as part of a farming operation, are owned by a farmer or leased to a farmer . . . , and are situated on land that is enrolled in a use value appraisal program or on a housesite adjoining enrolled land.

32 V.S.A. § 3752(14).

¶ 7. The statute defines farmer as, in relevant part, a person "who earns at least one-half of the farmer's annual gross income from the business of farming as the term is defined in Regulation 1.175-3 issued under the Internal Revenue Code of 1986." *Id.* § 3752(7)(A). Turning to the federal regulations, "[a] taxpayer is engaged in the business of farming if he cultivates, operates, or manages a farm for gain or profit, either as owner or tenant."[3] 26 C.F.R. § 1.175-3.

¶ 8. ■ The proper interpretation of "gain or profit" is the primary issue in this appeal. The United States Tax Court articulated that a farm operates for gain or profit when the taxpayer has a "dominant motive to make a profit." *Austin v. Comm'r*, 28 T.C.M. (CCH) 27 (T.C. 1969). The court noted that a farming business "will not be excluded . . . merely because it actually results in losses instead of profits, but it is essential that profits are being pursued." *Id.* The tax court also distinguished farms that are operated for pleasure, stating that an individual operates a farm for pleasure if he or she primarily is motivated by some purpose other than making a profit. *Id.*

---

[3] The federal regulations also list several factors to be considered when determining if a taxpayer is engaging in an activity for profit, 26 C.F.R. § 1.183-2, which the Goodrums urge are applicable here. As the superior court noted, these factors are not relevant to the "gain or profit" standard under § 1.175-3. The court reviewed them nonetheless and concluded that THF was not operating for profit.

¶ 9. ■ The Goodrums, despite their hard work, operate THF because of their love of animals — not to make a profit. We agree that their work with the animals is not all pleasurable, but their *motive* is not profit-driven. Under this standard, THF is not operating for gain or profit. Moreover, THF is funded almost exclusively by donations, a large share of which come from the Goodrums themselves. These donations cover THF's operating expenses. Its activities generate no income, a point emphasized by the superior court, and it realizes no profits.

¶ 10. The central theme of the Goodrums' position is that the Legislature intended to extend eligibility to nonprofit corporations. The Goodrums find that intent primarily in the statement of purpose contained in 32 V.S.A. § 3751 and in the absence of any exclusion of nonprofit corporations in the statement of purpose and the statutory requirements. They rely on *Mollica v. Division of Property Valuation & Review*, 2008 VT 60, 184 Vt. 83, 955 A.2d 1171, in which we stated that, because the current use statute is remedial in nature, our deference to PVR is "tempered by our paramount concern of construing the statute consistently with its explicitly stated purposes," *id.* ¶ 11, and that "we will not approve an agency's statutory interpretation that runs counter to the Legislature's explicitly stated purposes for that statute." *Id.* ¶ 20.

¶ 11. The Goodrums argue, based on their understanding of the Legislature's intent, that we must construe the statutory provisions to extend eligibility to nonprofit corporations. Accordingly, they argue that nonprofit corporations are operating for gain or profit when they successfully undertake and enhance their mission. They contend that the superior court, in relying on the traditional sense of profit as income generation, effectively excluded all nonprofit corporations from enrolling in the current use program because nonprofits are prohibited by law from making distributions. See 11B V.S.A. § 13.01.

¶ 12. ■ There is no one way for the Legislature to express its intent. It need not address explicitly the eligibility of nonprofit corporations, and we cannot draw from silence an intent to allow nonprofit corporations to be eligible as farmers. The stated purpose of the UVA Program is to "encourage and assist the maintenance of Vermont's productive agricultural and forestland," 32 V.S.A. § 3751, and the Legislature has the power to define "productive agricultural land" as it deems appropriate. The statute

implements this stated purpose, and we cannot conclude that the statute fails to achieve its goals merely because broader eligibility may result in stronger implementation.

¶ 13. The Legislature adopted requirements that are a clear and explicit barrier to THF's eligibility in the UVA Program. Our decision in *Mollica* is distinguishable because there the farm buildings satisfied the statutory criteria, but PVR nonetheless denied enrollment. Here, PVR denied enrollment of THF's buildings *because* they do not meet the statutory criteria. The Goodrums are attempting to read the statute more broadly than it was written.

¶ 14. It may be, as PVR argued, that nonprofit corporation eligibility would be rare under the "gain or profit" standard; it may be that it is impossible. In either case, this consequence cannot change our responsibility to apply the specific eligibility standards of the statute.

¶ 15. We also note that the Legislature's approach is supported by its adoption of a specific exemption of certain property that is owned or used by nonprofit corporations. See, e.g., 32 V.S.A. § 3802(4), (15). We particularly note § 3802(15), which provides an exemption for "[r]eal and personal property owned by a charitable, nonprofit organization devoted to the welfare, protection, and humane treatment of animals." The Legislature may conclude that dealing with property tax exemptions for nonprofit corporations directly rather than through the UVA Program or other programs that affect tax responsibility is more appropriate.

*Affirmed.*