NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 56

No. 23-AP-319

| | |
|---|---|
| William Fulton and Mary Fulton | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Department of Forests, Parks, and Recreation | June Term, 2024 |

Helen M. Toor, J.

Christopher J. Nordle of Nordle & Company, PLLC, Stowe, for Plaintiffs-Appellants.

Charity R. Clark, Attorney General, and Melanie Kehne, Assistant Attorney General,
  Montpelier, for Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.    **COHEN, J.**    This appeal arises from a decision of defendant Department of Forests, Parks, and Recreation (FPR), which determined that plaintiffs William and Mary Fulton used their property in a manner inconsistent with the terms of the Agricultural and Managed Forest Land Use Value Appraisal Program (Current Use program). Plaintiffs claim that the trial court erred in affirming FPR's decision to disenroll the property from the Current Use program for plaintiffs' impermissible tree-cutting activities. We affirm.

¶ 2.    The following facts are drawn from the record and are not in dispute.[1] On August 2, 2021, plaintiffs purchased property in the Town of Jericho consisting of approximately thirty-

---

[1] Because plaintiffs did not file a response to FPR's statement of undisputed material facts, the trial court deemed those facts to have been admitted for purposes of the cross-motions for summary judgment. See V.R.C.P. 56(e)(2). On appeal, plaintiffs do not challenge that aspect of the court's decision in rendering summary judgment for FPR.

two acres of land.[2]  At the time of purchase, the property was subject to a ten-year forest management plan, approved by FPR in July 2016, pursuant to the property's enrollment in the Current Use program as managed forestland.  See 32 V.S.A. §§ 3751-3776.  The Current Use program is designed to provide tax incentives to property owners who maintain their property according to an approved management plan.  See id. §§ 3751-3752, 3756-3757; see also Jones v. Dep't of Forest, Parks & Recreation, 2004 VT 49, ¶ 2, 177 Vt. 81, 857 A.2d 271 (providing brief overview of Current Use program's purpose).  Here, the plan generally prohibited tree cutting on the property except under limited circumstances.

¶ 3.     Prior to completing their purchase of the property, plaintiffs contacted FPR and the Department of Taxes, Division of Property Valuation and Review (PVR).  Plaintiffs inquired about the status of the property's enrollment in the Current Use program and potentially converting the property from managed forestland to agricultural land.  Plaintiffs were informed that the property remained enrolled in the Current Use program as managed forestland and that, should they wish to convert the property from forestland to agricultural, they would need to take several steps, one of which included amending the plan.  They were also cautioned that any tree cutting in violation of the plan would lead to the property's removal from the Current Use program and, consequentially, tax penalties.

¶ 4.     On August 9, 2021, after plaintiffs purchased the property, the Town of Jericho recorded plaintiffs' property-transfer tax return.  Plaintiffs indicated on the tax return that they had elected to continue the property's enrollment in the Current Use program.  See 32 V.S.A. § 3756(e) (requiring new owner of enrolled property who wishes to continue enrollment to indicate as much on property-transfer tax return at time of transfer).  Three days later, PVR notified plaintiffs by letter that, to maintain the property's enrollment, they must submit the required application with

_____

[2]  Plaintiffs filed a new property survey with the Town of Jericho in March 2022, showing a total parcel area of 32.02 acres, correcting the previously recorded total parcel area of 32.31 acres.

2

PVR and pay the statutory fee. See id. (requiring new owner of enrolled property who elects continued enrollment to submit application and statutory fee within thirty days of municipality receiving property-transfer tax return). The letter further explained that, if plaintiffs did not wish to continue the property's enrollment in the Current Use program, they must provide PVR with a completed notice-of-withdrawal form within thirty days; otherwise, PVR would begin the process of disenrolling the property. See id. § 3757(b) ("Any owner of eligible land who wishes to withdraw land from use value appraisal shall notify the Director [of PVR].")。 Plaintiffs neither filed an application to continue enrollment nor submitted a notice of withdrawal.

¶ 5. In September 2021, the county forester received a complaint about tree cutting on the property. After confirming with PVR that the property was still enrolled in the Current Use program, the forester drove by the property and saw evidence of tree cutting. That same month, plaintiffs contacted the Agency of Agriculture, Food, and Markets (AAFM) to inquire about obtaining a farm determination for the property because they wished to use the property for agricultural purposes. A representative from AAFM advised plaintiffs that they needed to submit a farm-business plan and obtain a farm-determination letter from AAFM to qualify for any regulatory exemptions for using the property for farming.

¶ 6. On October 5, 2021, PVR informed plaintiffs that, if it did not "receive either a Notice of Withdrawal Form or the application materials from [plaintiffs] within 30 days," PVR would "begin the process to discontinue the enrollment of [the] property from the Current Use Program." Plaintiffs did not respond and took no action.[3]

¶ 7. On October 18, 2021, the county forester left a voicemail with plaintiffs notifying them that he intended to inspect the property if they did not return his call within ten days.

---

[3] Plaintiffs explain in their brief that they decided against submitting the required application and statutory fee to continue enrollment as an effort to have the property administratively disenrolled from the Current Use program.

Plaintiffs did not respond. Instead, they submitted a farm-development plan to AAFM ten days later.

¶ 8. Receiving no response from plaintiffs, the county forester inspected the property in November 2021 and observed extensive tree-cutting on the property in violation of the forest management plan. The forester subsequently issued a conformance-inspection report documenting the violation and recommending to FPR that the property be removed from the Current Use program.

¶ 9. In December 2021, FPR adopted the conformance-inspection report and issued an adverse-inspection report concluding that plaintiffs had improperly engaged in development by cutting trees on the property in violation of the plan. FPR sent the report to plaintiffs and informed them that the property would be removed from the Current Use program, plaintiffs would incur a tax penalty, and the property would be ineligible for enrollment in the Current Use program for five years. The report was also forwarded to PVR. 32 V.S.A. § 3755(d) (providing that property removed from Current Use program as result of adverse inspection report "shall not be considered [for enrollment] for a period of five years"); id. § 3756(i)(1) (mandating removal of property subject to adverse-inspection report from Current Use program).

¶ 10. Later that same month, AAFM issued a farm determination that the property was eligible for farm use. However, AAFM's determination did not convert the property into agricultural land and did not change any aspect of the forestry-management plan. The determination also did not affect the property's enrollment in the Current Use program. Plaintiffs did not attempt to convert the property from forestry to agricultural land through the PVR-delineated process until January 2022.

¶ 11. In October 2022, the Commissioner of FPR issued a decision affirming the adverse inspection report and largely upholding the report's findings.[4] The Commissioner concluded that

---

[4] While upholding the report, the Commissioner revised the amount of property affected from 30.31 acres to twenty-five acres.

4

plaintiffs' tree cutting violated the forestry-management plan and thus constituted "development." The Commissioner's decision was reported to PVR and the Town of Jericho. See id. § 3757(a)-(d), (f) (providing for tax consequences and tax-lien obligations of property owner when owner develops land or property is withdrawn from Current Use program).

¶ 12. Plaintiffs appealed from the Commissioner's decision to the superior court which, after receiving cross-motions, rendered summary judgment in favor of FPR. The court concluded "that the property had not been removed from the Current Use program at the time of the tree-cutting," explaining that plaintiffs' failure to apply for continued enrollment and pay the statutory fee did not result in automatic disenrollment. It further determined that plaintiffs did not convert the property from forestland to agricultural land since they failed to pursue the established process for making that conversion. The court also rejected plaintiffs' argument that their tree-cutting was exempted from the definition of "development" under § 3752(5)(E). This appeal followed.

¶ 13. We review a decision granting summary judgment de novo, using the same standard as the trial court. Vt. Coll. of Fine Arts v. City of Montpelier, 2017 VT 12, ¶ 7, 204 Vt. 215, 165 A.3d 1065. "Summary judgment is appropriate when, construing the facts as alleged by the nonmoving party and resolving reasonable doubts and inferences in favor of the nonmoving party, there are no genuine issues of material fact and judgment is appropriate as a matter of law." Sheldon v. Ruggiero, 2018 VT 125, ¶ 14, 209 Vt. 33, 202 A.3d 241 (citing V.R.C.P. 56). In our review of such a motion, "we regard as true all allegations of the nonmoving party supported by admissible evidence and give the nonmoving party the benefit of all reasonable doubts and inferences." Wood v. Wallin, 2024 VT 21, ¶ 8, __ Vt. __, 316 A.3d 266 (quotation omitted). Our review of legal questions raised in a motion for summary judgment is plenary and nondeferential. Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co., 2004 VT 124, ¶ 14, 177 Vt. 421, 869 A.2d 82.

¶ 14. In their first claim on appeal, plaintiffs argue that because they did not submit the required application and statutory fee to keep the property enrolled in the Current Use program

within thirty days after the Town of Jericho received the property-transfer tax return, the property was automatically disenrolled from the program. Plaintiffs effectively argue that, pursuant to § 3756(e), removal from the Current Use program is automatic if a new owner does not take the required steps within the specified timeline. We disagree.

¶ 15. To resolve this claim, we must interpret the relevant statutes. In doing so, our role is to presume that the Legislature "intended the plain, ordinary meaning of the adopted statutory language," and we will apply that language where the meaning is clear and unambiguous. Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 14, 177 Vt. 287, 865 A.2d 350. When tasked to interpret a tax-exemption statute, as here, "[o]ur rule that tax statutes should be strictly construed against the party claiming exemption must be tempered by the paramount concern that statutes be construed reasonably so as not to defeat their purpose." Mollica v. Div. of Prop. Valuation and Rev., 2008 VT 60, ¶ 10, 184 Vt. 83, 955 A.2d 1171 (quotation omitted); see id. (applying rules governing interpretation of tax statutes when interpreting Current Use statutory scheme).

¶ 16. Section 3756(e) provides, in relevant part, that when a property enrolled in the Current Use program is transferred to another owner:

> the new owner shall be entitled to continue to have the eligible property appraised at its use value, provided the property remains eligible and provided the new owner shall elect the continuation of use value appraisal on the property-transfer tax return at the time of transfer and, within 30 days after the property transfer tax return has been received by the municipality of recording, has applied to the Director [of PVR] and paid the fees described in this subsection.

32 V.S.A. § 3756(e).

¶ 17. The plain language of § 3756(e) does not provide that a new owner's failure to comply with its terms results in the property's automatic removal from the Current Use program. Relatedly, § 3757(e)(3) does state that "[a] transfer of ownership, alone, will not affect eligibility of the parcel." Upon a transfer of ownership, however, the failure of a new owner "to provide maps, a new application, or transfer information to [PVR] within 30 days of a request being sent by certified mail by the Director will result in removal of the parcel from the program." Id.

6

¶ 18. Neither § 3756(e) nor § 3757(e)(3) sets forth any process for disenrollment. Despite the statutes' silence on that issue, the plain language indicates that the Legislature did not intend for a property to be automatically disenrolled if a new property owner fails to submit an application or pay the statutory fee within the thirty-day period. Rather, the statutes make clear that the Director of PVR controls removal from the Current Use program. While a new owner must file an application with the Director and pay the statutory fee within thirty days after the municipality receives the property-transfer tax return, § 3756(e), a property will not be removed unless that owner fails to submit that application within thirty days of the Director's written request, § 3757(e)(3). In addition, § 3756(i) states expressly that "the Director shall remove from [the Current Use program] an entire parcel of managed forestland" upon the happening of certain events and that, under certain circumstances, "the Director may delay removal from use value appraisal." Id. § 3756(i)(1)(A); see also id. § 3756(i)(2) (providing that "Director shall remove" property from Current Use program upon certain occurrences). Read together, the statutes clearly contemplate that the Director manages the process for removing a property from the Current Use program. See In re Vt. Verde Antique Int'l, Inc., 174 Vt. 208, 211-12, 811 A.2d 181, 184 (2002) (explaining that statutes should be interpreted within context and structure of entire scheme, not in isolation). There is nothing in any of the relevant statutes that suggests otherwise, let alone any indication that a property is automatically disenrolled upon a new owner failing to comply with the terms of § 3756(e).

¶ 19. There are several reasons why we cannot accept plaintiffs' chosen interpretation, which effectively asks us to add a self-executing removal provision into these statutes. To start, we generally "will not read something into a statute that is not there unless it is necessary to make the statute effective." In re 204 N. Ave. NOV, 2019 VT 52, ¶ 6, 210 Vt. 572, 218 A.3d 24 (quotation omitted). Automatic disenrollment is unnecessary to effectuate the purpose of the Current Use program statutes because the Director of PVR has the authority and the statutory directive to take that action when property owners fail to abide by the statutes' requirements.

¶ 20. Further, plaintiffs' position would undermine the remedial purpose that the Legislature intended for the Current Use program to serve. See Mollica, 2008 VT 60, ¶ 10 ("[T]he legislatively established current-use program is a remedial statute designed for the express purpose of alleviating the tax burden on landowners who promise to maintain their land in agricultural or forest use."). Plaintiffs' interpretation would lead to a draconian system that unfairly penalizes landowners without affording any opportunity to remedy procedural issues. There is nothing in the statutory scheme indicating that the Legislature intended such a rigid approach. Rather, the statutes suggest the exact opposite. See 32 V.S.A. § 3751 (providing that purpose of statute is, inter alia, "to encourage and assist the maintenance of Vermont's productive agricultural land and forestland . . . and to enable the citizens of Vermont to plan its orderly growth in the face of increasing development pressures in the interests of the public health, safety, and welfare").

¶ 21. Accordingly, a property that has been transferred to a new owner is not automatically disenrolled from the Current Use program when that new owner fails to submit an application and pay the applicable fee within the thirty-day statutory deadline. Instead, disenrollment occurs only upon the Director of PVR removing the property from the Current Use program using the established process. For these reasons, we conclude that there is no genuine dispute that the property was still enrolled in the Current Use program when plaintiffs started cutting trees.

¶ 22. Plaintiffs also claim that their tree cutting on the property was not "development" as the term is defined in § 3752(5). See generally 32 V.S.A. § 3757 (providing for tax consequences where owner engages in development of property). According to plaintiffs, their tree-cutting activities were exempted from "development" under § 3752(5)(E). We are unpersuaded.

¶ 23. Under § 3752(5)(C), "development" is defined, in part, as "the cutting of timber on property appraised under this chapter at use value in a manner contrary to a forest or conservation management plan as provided for in subsection 3755(b) of this title during the remaining term of

8

the plan." The statute does, however, except some activity from the definition of "development." Relevant here, development "does not include the construction, reconstruction, structural alteration, relocation, or enlargement of any building, road, or other structure for farming, logging, forestry, or conservation purposes." Id. § 3752(5)(E).

¶ 24.    Plaintiffs argue that their tree cutting fell under this exception because it was done for the purpose of utilizing the property for agricultural use. However, the statute expressly limits the exemption to "the construction, reconstruction, structural alteration, relocation, or enlargement of any building, road, or other structure." Id. § 3752(5)(E) (emphasis added). Although these terms are not defined, the language unambiguously confines the exemption to construction and alteration of structures. See In re Tyler Self-Storage Unit Permits, 2011 VT 66, ¶ 8, 190 Vt. 132, 27 A.3d 1071 (explaining that general terms followed by series of specific terms are interpreted to apply only to items of the same class as those specifically mentioned). Tree cutting, by itself, is plainly not the construction or alteration of a structure. In reading § 3752(5)(E), it is clear that the Legislature intended to exempt from "development" the construction, reconstruction, alteration, relocation, or enlargement of any structure that furthers the approved purpose for which a property is enrolled in the Current Use program. See Mollica, 2008 VT 60, ¶¶ 17-18 (concluding that seasonal cottage on Christmas tree farm was farm building rather than development and therefore eligible for enrollment in Current Use program because primary use was agricultural to serve farm's operations). In other words, cutting trees may not constitute development under § 3752(5)(E) if the primary basis for doing so is to build a structure that would serve the purpose for which the property is enrolled in the Current Use program. See id. In this case, there is no dispute that at the time of the tree cutting, the property was enrolled in the Current Use program as managed forestland subject to an approved forest management plan; the property was not enrolled as agricultural land.[5] Thus, § 3752(5)(E) does not apply.

_____

[5] We are unpersuaded by plaintiffs' suggestion that the AAFM's determination approving the property for farm use in December 2021 is relevant for assessing whether the tree-cutting fell

¶ 25. Our conclusion is buttressed by the practical considerations were we to hold otherwise. While plaintiffs here might have hoped to use the property for agricultural purposes, interpreting § 3752(5)(E) to encompass any activity associated with land use would create a nearly limitless set of exempt activities. As a result, any owner could effectively violate the terms of an operative management plan that governs a property's enrollment in the Current Use program by using the property for "farming, logging, forestry, or conservation purposes," even if that unapproved use does not fall within the purpose for which the property is enrolled. Id. Such an outcome would create an untenable situation where "the exception would literally swallow the rule." C&S Wholesale Grocers, Inc. v. Dep't of Taxes, 2016 VT 77A, ¶ 17, 203 Vt. 183, 155 A.3d 169.

Affirmed.

FOR THE COURT:

_____

Associate Justice

under § 3752(5)(E). Viewing the uncontroverted evidence in the light most favorable to plaintiffs, there is no dispute that an AAFM farm determination does not affect a property's status in the Current Use program. More specifically, plaintiffs do not argue that the AAFM's determination converted the property's enrollment in the Current Use program from managed forestland to agricultural land. The undisputed facts establish that PVR will only change a property's enrollment in the Current Use program from forestland to agricultural land when the county forester notifies PVR that conversion is complete upon approval of an amended management plan, and that plaintiffs knew of PVR's conversion requirements before they began cutting trees. Plaintiffs failed to begin the conversion process until January 2022, two months after they began cutting trees. Even if AAFM's determination were relevant, it is undisputed that AAFM did not issue the determination until December 2021, approximately one month after plaintiffs started cutting trees on the property.