2011 VT 66

## In re Tyler Self-Storage Unit Permits (Angela Arkway, et al., Appellants)

[27 A.3d 1071]

No. 10-307

Present: **Dooley, Johnson, Skoglund and Burgess, JJ., and Crawford, Supr. J., Specially Assigned**

Opinion Filed June 23, 2011

*Robert E. Woolmington* of *Witten, Woolmington & Campbell, P.C.*, Manchester Center, for Appellants.

*David R. Cooper* of *Kenlan, Schwiebert, Facey & Goss, P.C.*, Rutland, for Appellee.

¶ 1. **Burgess, J.** A group of neighbors in the Town of Dorset appeal from a Superior Court, Environmental Division (Environmental Court) decision granting Bradford Tyler's application for a zoning permit for the construction of a self-storage facility in the Dorset Village Commercial District. Appellants contend that the court erred in determining the rental storage units to be an authorized land use within the applicable Dorset zoning district. We reverse.

¶ 2. Applicant Tyler owns and resides on a 5.6-acre property located in the Village Commercial District (VC District) of the Town of Dorset. He filed for a zoning permit to construct a self-storage facility on his property. The proposed facility consists of three one-story buildings, each twenty feet wide and one hundred feet long and containing twenty-four individual storage bays for a total of seventy-two bays. Applicant intends to rent the bays to customers who, according to the application, "would place and store belongings in them."

¶ 3. The town planning commission issued written approval of applicant's site development plan. Following this, the town zoning administrator issued a zoning permit. Interested neighbors appealed to the Dorset Zoning Board of Adjustment, contending that applicant's proposed self-storage facility is not a "retail sales/ rentals" use, as required by the town's zoning bylaws for development in the VC District. See Town of Dorset Zoning Bylaw [hereinafter Bylaws] § 6.3.4(b)(3) (2005). By a vote of four to three, with two members of the nine-member Board not voting, the Board determined that applicant's proposed facility was not permitted in the VC District.

¶ 4. Neighbors, in response to applicant questioning the validity of a decision rendered by less than a majority of the Board, appealed to the Environmental Court. They asserted that, regardless of the majority vote issue, the earlier approval by the zoning administrator was erroneous and should be voided. Applicant cross-appealed, arguing that the Board's denial was invalid and that the proposed facility was a permitted use in the VC District. The parties filed cross-motions for summary judgment on the question of whether a storage facility was permitted. The Envi-

ronmental Court granted applicant's motion and denied neighbors', holding that the proposed use was permissible as a "retail rental."

¶ 5. Neighbors appeal now to this Court, contending that the Environmental Court erred: (1) by ignoring a straightforward reading of the Bylaws and substituting its own construction of "retail rental" to expand the scope of permitted uses in the VC District in a manner inconsistent with the zone's stated purposes; and (2) in finding that applicant's proposed facility would provide "retail rentals" serving individual uses when applicant's affidavit indicated that most customers interested in renting space were not individuals, but businesses planning to store equipment and excess inventory. Applicant disagrees with both contentions and also argues that the Bylaws should be interpreted in his favor because they are internally inconsistent and the ordinance's reliance on "any readily available dictionary" to define words not specifically defined in the Bylaws renders them standardless and unconstitutionally vague. We hold that the plain language of the Bylaws precludes applicant's self-storage facility.

¶ 6. The Environmental Court construed the "retail sales/rental" language to mean " 'retail sales or retail rentals' in the VC District," and defined "retail rental" as "a commercial establishment" that "involve[s] small-quantity rentals directly with a consumer, as opposed to wholesale rentals." "We will uphold the Environmental Court's construction of a zoning ordinance if it is rationally derived from a correct interpretation of the law and not clearly erroneous, arbitrary, or capricious." *In re Pierce Subdiv. Application*, 2008 VT 100, ¶ 8, 184 Vt. 365, 965 A.2d 468 (quotation omitted). When interpreting the language of a zoning ordinance, we are "bound by the plain meaning of the words . . . unless the express language leads to an irrational result." *Id.*

¶ 7. Dorset's Zoning Bylaws permit "retail sales/rentals" in the VC District, subject to site plan approval and several restrictions:

> Retail sales/rentals. All sales, storage and display of merchandise shall occur within an enclosed structure, except for temporary display of merchandise outdoors, on-site during the operating hours of the business or from 8:00 a.m. to 6:00 p.m., whichever is later, provided that all such merchandise is stored in a building or screened storage area at the close of business each day. Agricultural products are exempted from the outdoor

storage restrictions. No sale of automotive or diesel fuel is permitted.

Bylaws § 6.3.4(b)(3).

■■■ ¶ 8. The Environmental Court initially construed the phrase "retail sales/rentals" to mean "retail sales or retail rentals." This was reasonable. The virgule ("/") is used "to separate alternatives," American Heritage Dictionary of the English Language 1922 (4th ed. 2006), and is reasonably understood to be disjunctive, another expression of the word "or." *Danco, Inc. v. Commerce Bank/Shore, N.A.*, 675 A.2d 663, 666 (N.J. Super. Ct. App. Div. 1996). The canon of statutory construction of *ejusdem generis* dictates that, when words "bearing a specific description are followed by words of more general import, the sense of the adjective first used is applied to the words that follow." *Kalakowski v. John A. Russell Corp.*, 137 Vt. 219, 224, 401 A.2d 906, 909 (1979). "Retail," a specific description, is followed by "sales" and "rentals," words of more general import. Thus, the court appropriately concluded that the phrase "retail sales/rentals" translates to "retail sales or retail rentals." Cf. *id.* at 223-24, 401 A.2d at 909 (applying "retail" in phrase "retail store, stand, sales and sales rooms" to each term following "retail").

¶ 9. The court next examined how the Bylaws' definition of "retail" informs the term "retail rentals." The term "retail" is defined in the ordinance to mean "a shop or store for the sale of goods, commodities, products or services directly to the consumer, as opposed to wholesale." Bylaws app. A at 7. The court noted that to define retail rentals in terms of sales results in internal inconsistency within the Bylaws because sales and rentals are distinctly separate concepts. To resolve this conflict, the court first focused on the distinction between retail sales to individual customers and wholesale sales to business or industrial customers. The Bylaws note this distinction, a fact the court interpreted as indicative of the drafters' intent to define "retail rentals" as involving "small-quantity rentals directly with a consumer, as opposed to wholesale rentals." The court then fleshed out its construction of "retail rentals" based on the inclusion of "shop or store" in the ordinance's definition of "retail," choosing a broad dictionary definition for the terms: "any commercial or industrial establishment." Using this definition, the court concluded that so long as a facility is a "commercial establishment" and rents to

individuals, rather than to industrial customers or on a wholesale basis, the facility is permissible in the VC District.

¶ 10. There are several problems with this construction of "retail rentals." The court placed too much emphasis on the distinction between retail and wholesale and ignored the ordinance's language defining "retail" establishments as shops or stores providing goods and services. Specifically, the court failed to attend to the most ordinary contexts of "shop" and "store," instead choosing a much broader definition that can encompass virtually all businesses regardless of dimension or purpose. "Shop" has several definitions, the first and most common being a "small retail store or a specialty department in a large store." American Heritage Dictionary, *supra*, at 1609; see also Webster's New International Dictionary 2319 (2d ed. 1961) (defining "shop" as "[a]n artisan's place of manufacture and sale . . . . In the United States *shop* means esp. a place of manufacture or repair . . . ."). Applicant's facility clearly does not fit this description; it is neither small in scale nor a specialty department within a larger store. "Store" likewise has several definitions, but primarily refers to a "place where merchandise is offered for sale; a shop." American Heritage Dictionary, *supra*, at 1708; see also Webster's New International Dictionary 2486 (defining "store" as "[a]ny place where goods are kept for sale, whether by wholesale or retail; a shop."). The centrality of merchandising to this definition combined with the analogy to a shop suggests that applicant's proposed facility, which would offer neither goods nor services for sale or rent, is no more a "store" than it is a "shop."

¶ 11. The court's definition also fails to take into account the subsections surrounding the ordinance's "retail sales/rentals" provision. The Bylaws list numerous other permitted uses within the VC District, including "personal service establishments" and "contractors." Bylaws § 6.3.4(b)5, 9. The examples of "personal service establishments" listed in the Bylaws, such as "barber shops, hairdressers [and] shoe repair" provide an illustration of the difference between applicant's facility and the approved uses for the VC District. *Id.* § 6.3.4(b)5. Not only do these businesses all appear to involve foot-traffic between the street and the interior of the shop or store to purchase and receive services, they also involve direct, face-to-face transactions with customers. Conspicuously absent from these lists is any mention of storage units or the like, the ongoing commercial uses of which, except for the

initial visit to make the rental contract, are devoid of customer-merchant foot traffic or interpersonal interactions to procure goods or services.

¶ 12. In fact, "personal service establishment" informs not only our general understanding of the definition of "retail rentals," but also our understanding of "services" in the definition of "retail." It is implausible that the town intended to carefully circumscribe the services allowed in the VC District under the "personal service establishment" section, only to permit any and all services, save those of a "wholesale" variety, in the "retail sales/rentals" section. Thus, a definition of "retail rental" that encompasses applicant's proposed storage facility comprised of what amounts to a series of mini-warehouses is not in keeping with the total wording and structure of the Bylaws.[1]

¶ 13. The court's definition not only tends to contradict the Bylaws' language, it is at odds with the zoning district's purpose. We examine not only the plain language of a zoning ordinance, but also "the whole of the ordinance . . . in order to try to give effect to every part," and will adopt an "interpretation that implements the legislative purpose." *In re Nott*, 174 Vt. 552, 553, 811 A.2d 210, 211-12 (2002) (mem.). "The primary purpose of zoning is to bring about the orderly physical development of a community." *In re Casella Waste Mgmt., Inc.*, 2003 VT 49, ¶ 17, 175 Vt. 335, 830 A.2d 60. As such, it is essential that we construe a zoning ordinance to determine and give effect to the intent of the drafters. "The legislative intent is most truly derived from a consideration of not only the particular statutory language, but from the entire enactment, its reason, purpose and consequences." *Delta Psi Fraternity v. City of Burlington*, 2008 VT 129, ¶ 7, 185 Vt. 129, 969 A.2d 54 (quotation omitted).

¶ 14. The purpose of the VC District is to provide for "a combination of residential and compatible village-scale commercial uses, which provide convenience services and incidental shopping . . . while protecting scenic and environmental qualities . . . and retaining the residential character of the villages." Bylaws § 6.1. The permitted uses listed for the town's VC District

---

[1] As neighbors point out, despite the court's claim that the units were intended "to rent to individual customers for their personal storage needs," many entities interested in storage identified in applicant's own affidavit were local businesses hoping to store their equipment and inventory.

comport with the stated purpose and include not only the personal service establishments previously discussed, but also residences, residential businesses, business and professional offices, and other small-scale retail and repair shops, all promoting merchandizing, personal, professional or technical services. Bylaws § 6.3.4(b). The businesses listed by applicant between the proposed site and the Dorset Green in the center of the village generally fit these requirements while preserving the residential character of the village, providing a wide variety of convenience services and incidental shopping, including small retail and service establishments, bed and breakfasts, inns, farmer stands, and art galleries. While the "retail rental" of tools, housewares, furniture and equipment would be in keeping with the regulation's merchandizing theme, the rental of space for storage would not.

¶ 15. In the same vein, the Environmental Court's construction allowing any nonwholesale commercial establishment would provide little meaningful limitation on the size or type of business facility allowed in the VC District, except to exclude wholesalers. Carried to its logical end, the court's definition would allow so called big-box stores or other large-scale businesses to intrude into the village environment, thereby undermining the VC District's express purpose. Applicant's facility itself provides an example of how overinclusive the standard is. The storage complex would consist of three stand-alone buildings, with multiple bays and traffic at potentially any hour of the day or night. There would be no retail activity or character, residentially compatible or otherwise, in such a facility. Permitting this facility is inconsistent with both the language and purpose of the Bylaws.[2]

¶ 16. Applicant raises two other arguments in his brief, neither of which is availing. First, applicant correctly points to the standard regarding zoning ordinances and common law property rights: "[b]ecause land use regulation is in derogation of the common law," if the plain language of an ordinance is unclear, any "ambiguity is resolved in favor of the landowner." *In re Miserocchi*, 170 Vt. 320, 324, 749 A.2d 607, 611 (2000). Applicant argues that we should find in his favor because zoning ordinances restrict property owners' common law right to use their property as they wish, and the Bylaws are internally inconsistent. However,

---

[2] Because we agree with neighbors' first argument, we do not address their second, that the court misapplied its own standard.

if examination of the plain language of the ordinance "resolves the conflict without doing violence to the [overall zoning] scheme, there is no need to go further, always bearing in mind that the paramount function of the court is to give effect to the [drafters'] intent." *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 49, 527 A.2d 227, 228 (1986).

■ ¶ 17. Defining "retail" in terms of sales arguably creates a conflict when used to define "retail *rentals*," but any incongruity dissolves by reference, again, to the totality of the language in the Bylaws. Using the common understanding of the words involved, and in the context of the overall scheme and purpose of the VC District, it is clear that the Bylaws' drafters intended "retail sales/rentals" to include only residential and small-scale commercial establishments trading in services or in goods, for sale and for rent, as opposed to renting storage space as applicant proposes. There is therefore no ambiguity to resolve in favor of applicant. *Miserocchi*, 170 Vt. at 324, 749 A.2d at 611.

■ ■ ¶ 18. Second, applicant argues that the Bylaws' reference to "any readily available dictionary" to define any word not otherwise defined under the Bylaws does not provide proper notice to those governed by them, rendering them standardless, unconstitutionally vague, and unenforceable. Zoning ordinances must establish standards which are "general enough to avoid inflexible results," but also specific enough to avoid "leav[ing] the door open to unbridled discrimination." *Town of Westford v. Kilburn*, 131 Vt. 120, 124-25, 300 A.2d 523, 526 (1973). Applicant claims that, because "any readily available dictionary" could include user-created, unreviewed online dictionaries, in which anyone can modify the definition, landowners have no notice of the clear meaning of undefined words in the Bylaws. However, it is not clear how this direction in the Bylaws differs from the most basic tenet of textual interpretation: that words otherwise undefined are ordinarily defined by reference to the nearest available dictionary. 2A N. Singer, Sutherland Statutory Construction § 47:7, at 303-04 (7th ed. 2007). Because "[t]he dictionary is merely a compendium of plain and commonly accepted meanings, which we presume are intended by statutory language," *Route 4 Assocs. v. Town of Sherburne Planning Comm'n*, 154 Vt. 461, 464, 578 A.2d 112, 114 (1990), applicant's argument is unpersuasive. Fraudulent or misleading alterations to electronic dictionary defi-

nitions should be readily discernable by comparison to conventional sources. In any event, applicant points to no such aberrance here. That a landowner could theoretically be confused about the land-use standard because the Bylaws could be misinterpreted by reference to a rogue definition in a dictionary, print or electronic, is immaterial to this case. Absent an actual issue of competing and confusing definitions, the reliance of the regulations on "any readily available dictionary" reflects common sense and does not lead to unfettered discretion on the part of zoning administrators.

*Reversed.*