VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



Docket No. 23-ENV-00128

| | |
|---|---|
| Town of Duxbury,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>Anthony Kessler,<br>　　　　　Respondent. | **MERITS DECISION** |

This is an enforcement action brought by the Town of Duxbury (Town) against Anthony Kessler (Respondent) regarding alleged zoning violations at Respondent's property located at 317 South Richardson Road, Duxbury, Vermont (the Property).

This Court held a merits hearing on July 29, July 30 and September 3, 2025 via the WebEx videoconferencing platform. The Town appeared and is represented by Beriah C. Smith, Esq. and David W. Rugh, Esq. Respondent appeared and is represented by John L. Franco, Esq. Following trial, the parties filed post-trial memoranda, which were due on September 25, 2025, at which point the Court took this matter under advisement.

### Findings of Fact

1. Respondent Anthony Kessler owns property located at 317 South Richardson Road, Duxbury, Vermont.

2. The Property is located within the Forest Residential Recreational District, as that term is defined by the Town of Duxbury Land Development Regulations, amended March 1, 2022 (the Regulations).

3. Respondent purchased the Property in 2018.

4. The Property is improved by a primitive camp with an enclosed front deck (the Camp).

5. The Camp's front deck was enclosed prior to Respondent purchasing the Property and Respondent did not enclose the deck.

6. On June 17, 2023, the Town Zoning Administrator sent Respondent a letter notifying him that the Zoning Administrator believed Respondent to be in violation of the Regulations at the Property because of his "occupation of the camp as a primary residence." Ex. B at 1.

7. The Zoning Administrator wrote that "[t]o reside in the structure for more than 60 days a year, or more than 3 weeks at a time, it must be converted from a camp to a primary residence." Id.

8. It also informed Respondent that he was in violation of the Regulations for enclosing a deck at the Camp. Id. at 2.

9. On August 14, 2023, the Zoning Administrator issued a formal notice of violation to Respondent informing him that he was in violation of the Regulations because he had "commenced land development without a permit by expanding the size of a structure's interior space by enclosing a deck, and by expanding/changing the use of the parcel from a primitive camp to a residence." Ex. C (the NOV).

10. The NOV provided Respondent with seven days to the cure the violation either by discontinuing the violations or obtaining a zoning permit or otherwise risk the Town's pursuit of an enforcement action in this Court. Id. This period ended on Monday, August 21, 2023.

11. The NOV also informed Respondent of his right to appeal the NOV.

12. No appeal was taken of the NOV, which has since become final and binding.

13. The Town initiated this action in November 2023.

14. The Town has expended $31,890.30 relative to this enforcement action.

15. Following the NOV, Respondent stayed at the Property in a pop-up camper parked on the Property.

16. From August 2023 through August 2024, Respondent stayed at the Property in the pop-up camper no more than 14 days a month.

17. In addition to staying overnight in the camper, Respondent was regularly at the Property during this period. During such visits, Respondent would not sleep overnight in the pop-up camper or in the Camp but visited the Property to care for livestock and do other work.

18. When not staying overnight at the Property, he stayed with a mentor in Burlington or with others.

19. Respondent did not reside in the Camp structure following August 21, 2023.

20. The Camp contains various personal property, including a piano that came with the Property when it was purchased, a punching bag, tools and hardware, candle making equipment, and items related to Respondent's livestock and agricultural activities on the Property.

21. In February 2024, Respondent received a zoning permit to for a new residential structure at the Property, which required that Respondent obtain a wastewater permit from the Agency of Natural Resources. See Ex. Q.

22. Respondent obtained State certification of the water and wastewater system on August 21, 2024.

23. No party disputes that, after August 21, 2024, there was no residential zoning violation occurring at the Property.

24. The front deck of the Camp remains enclosed.

**Discussion**

It is undisputed that the NOV was not timely appealed. The NOV is therefore final and binding on all parties, including Respondent and this Court. 24 V.S.A. § 4472. Thus, it has been conclusively established that Respondent violated the Regulations §§ 3.1 and 3.2 because he had "commenced land development without a permit by expanding the size of a structure's interior space by enclosing a deck, and by expanding/changing the use of the parcel from a primitive camp to a residence."[1] See Ex. C. This violation has been established even if in error. See City of S. Burlington v. Dep't of Corr., 171 Vt. 587, 588—89 (2000) (mem). Thus, to the extent that Respondent seeks to challenge whether there was ever a violation at the Property, such arguments amount to an impermissible collateral attack on the NOV. See Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 142 (1989) (explaining the bar on collateral attacks of previously decisions).

The Court must again review, however, the scope of the NOV and the violation before the Court.[2] The parties appear to dispute the scope of the residential use violation and how that alleged use may relate to curing of the use aspect of the NOV. The Town argues that Respondent converted the entire Property, outside the Camp, into his residence and therefore his sleeping in a pop-up camper after the NOV was issued and using other structures on the Property when he was camping or in connection with his agricultural uses of the Property, amount to a continuing violation under the NOV. Respondent argues that the NOV was limited to use of the Camp structure as a residence and

---

[1] The Court is aware, and it is undisputed, that Respondent did not enclose the deck and that activity occurred prior to his ownership of the Property.

[2] In his post-trial memorandum, Respondent disputes whether the so-called "greenhouse" enclosure at the back of the Property is before the Court in this matter. We conclude that it is not. The "deck enclosure" violation clearly relates to the enclosure of the front deck facing towards South Richardson Road and the Court will not therefore review the greenhouse enclosure. The Town, through its post-trial filing, appears to agree that this issue is not before the Court in this matter and focuses the violation on the front deck enclosure.

that his camping in the pop-up camper for lengths of time discussed below was not a continuation of the noticed violation but instead a cure of that violation. The Court agrees.

The NOV states that Respondent violated the Regulations by "expanding/changing the use of the parcel from a primitive camp to a residence." NOV at 1. The Regulations only use the term "primitive camp" in the definitions section. It defines the term as "[a] living unit . . . that has no interior plumbing, except for one sink with water . . . [and] may contain a compositing toilet or incinerating toilet . . . ." Regulations Art. IV, § 2 ("Primitive Camp"). Thus, the Regulations' plain language relates a "primitive camp" to the use of the structure. See In re Tyler Self-Storage Unit Permits, 2011 VT 66, ¶ 13, 190 Vt. 132 (addressing how the Court interprets zoning ordinances). As such, although the NOV relates to the change in the use of the parcel, the referenced violation relates to a use of the structure. Because the only use of the Property that preceded the NOV was the use of the Camp, the NOV must be limited in scope to use of the Camp.[3] Further, Respondent's use of the pop-up camper when he stayed at the Property only occurred after the NOV was issued. Thus, it cannot follow that his use of the pop-up camper is the same use that gave rise to the NOV. Finally, the "primitive camp" durational limitations are found within the definition of primitive camp only. In contrast, a "Recreational Vehicle (RV) or Travel Trailer," is defined in part as a "vehicle designed for road travel, camping or other temporary use that is built on a chassis . . .; designed to be self-propelled, or towable by a pickup truck . . ." Regulations Art. IV, § 2 ("Recreational Vehicle (RV) or Travel Trailer"). The Regulations then state that a zoning permit is required for occupation of an RV when the RV is occupied for substantially longer periods than a "primitive camp." Regulations § 3.2(M) (requiring a zoning permit for use of an RV as a residence outside of permitted areas "for a period exceeding two (2) consecutive months and up to six (6) months in a calendar year.").

The pop-up camper activity is therefore subject to a different provision of the Regulations. While both provisions set forth durational limitations on occupancy, each concern occupancy of different structures. The maximum durational limitation for occupancy of an RV is approximately three times as long as that for a primitive camp. The NOV noticed a violation as it relates to the primitive camp definition and the Court will not expand it to include an alleged violation of the RV provisions of the Regulations.[4]

---

[3] This interpretation of the NOV is consistent with the Town's June 2023 warning notice letter that predated the NOV which informed Respondent that "[t]o reside in the structure for more than 60 days a year, or more that 3 weeks at a time, it must be converted from a camp to a primary residence." Ex. B (emphasis added).

[4] Because the Court concludes that staying in the pop-up camper was not included in the NOV, the Court need not conclude whether Respondent complied with the applicable provisions related to RV occupancy.

Despite this, the Court has not been presented with evidence sufficient to conclude that the Camp was used as a residence after the seven-day cure period in the NOV.[5] The Court received substantial evidence that demonstrated that Respondent was regularly at the Property throughout the year following the NOV,[6] including in the morning and evenings. Despite the presence of personal property in the Camp, such as a piano, boxing punching bag, and other items related to Respondent's use of the Property (such as candle-making equipment, tools and hardware), the Court received no evidence that Respondent was using the structure as his residence after the seven-day cure period.[7]

Instead, the Court received credible evidence from Respondent that he was regularly at the Property. He would stay at the Property in a pop-up camper up to 2 weeks a month. He did not sleep in the Camp and used it for storage of various personal property. Pop-up camper use was not occurring prior to the NOV and is governed by provisions of the Regulations other than those related to primitive camps as set forth above. Compare Regulations, Art. VI § 2 ("Primitive Camp") with Regulations § 3.2(M) (requiring a zoning permit for use of a recreational vehicle or travel trailer as a residence for time periods set forth therein). While the Court need not determine whether Respondent's use of the pop-up camper on the Property was a separate violation of the Regulations and because no such NOV has been issued, this use was not contemplated by the NOV and only occurred after the NOV was issued.[8] Further, it is undisputed that Respondent was able to occupy other structures on the Property as a residence as of August 21, 2024 and his use of the Property in this regard since that date cannot be construed as a zoning violation contemplated by the NOV.

Because the Court lacks evidence that this residential aspect of the NOV continued beyond the seven-day cure period, the Court will not levy fines related to this violation. Further, because it has been fully cured, the Court need not fashion injunctive relief.

---

[5] Respondent has argued that the Camp structure is a farm structure exempt from local zoning. Because we conclude that there has been no evidence of a continuing violation noticed in the NOV following the seven-day cure period, we need not determine whether the Camp is a farm structure exempt from zoning.

[6] The Court received ample evidence of Respondent's and/or Respondent's guests using the Property prior to the issuance of the NOV. This evidence is not relevant to the post-NOV enforcement period.

[7] The Court also received conflicting testimony regarding third parties camping at the Property in the fall of 2023 and the spring of 2024, following the NOV. The Court finds credible Respondent's testimony that these individuals were not residing at the Property and, in any event, the Court has received no evidence that these individuals were using the Camp as their residence.

[8] It is for all of these reasons that the Court further disagrees with the Town's argument that sleeping in the pop-up camper and not the Camp did not cure the violation. Functionally, the Town argues that despite sleeping elsewhere, the Camp structure remained Respondent's residence because it retained his personal property and he generally used it when he stayed at the Property, overnight or otherwise. While it is true that sleeping at a structure is only one aspect of establishing a residential use, the evidence of Respondent's use of the Camp is functionally as a shed or storage building that lacks the typical characteristics of a residence or dwelling.

The Court turns next to the enclosure of the deck.[9] This Court is authorized to impose a fine of up to $200 per day for each day that a violation remains ongoing. 24 V.S.A. § 4451(a)(3). This Court has "broad discretion" when determining the fine to be imposed. Beliveau NOV, 2013 VT 41, ¶ 22. "When determining a fine, the Environmental Division must 'balance any continuing violation against the cost of compliance and . . . consider other relevant factors, including those specified in the Unified Environmental Enforcement Act.'" Town of Pawlet v. Banyai, 2022 VT 4, ¶ 30 (quoting Beliveau NOV, 2013 VT at ¶ 23). The Uniform Environmental Enforcement factors are:

> (1)     the degree of actual or potential impact on public health, safety, welfare, and the environment resulting from the violation;
>
> (2)     the presence of mitigating circumstances, including unreasonable delay by the Secretary in seeking enforcement;
>
> (3)     whether the respondent knew or had reason to know the violation existed;
>
> (4)     the respondent's record of compliance;
>
> (5)     Repealed by 2007, Adj. Sess., No. 191, § 5, eff. July 1, 2008.
>
> (6)     the deterrent effect of the penalty;
>
> (7)     the State's actual costs of enforcement; and
>
> (8)     the length of time the violation has existed.

10 V.S.A. § 8010(b)(1)—(8).

The Court reviews each of these factors.

First, there is no allegation of any degree of impact to public health, safety, welfare, and the environment resulting from the enclosing of the deck. This weighs in favor of a lesser fine.

Second, significant mitigating circumstances are present here in the form of delay of enforcement of this violation. This violation first occurred sometime before 2018 and Respondent's ownership. Respondent was not served with an NOV until 2023, 5 years after he purchased the Property and an unknown time after the violation first occurred. This weighs in favor of a lesser fine.

Third, while Respondent likely had constructive notice of the violation in the form of a lack of a zoning permit on file with the Town for this work, because the work occurred prior to his

---

[9] Respondent, in his post-trial memorandum, argues that the Town lacks standing to pursue the deck enclosure violation because there was no injury to the Town. Respondent asserts that the deck enclosure was not done in nonconformance with the Regulations. This functionally argues that there was no violation of the Regulations. As set forth herein, the NOV has conclusively established that the enclosure was in violation of the Regulations such that this assertion is an impermissible collateral attack on the final NOV. See 24 V.S.A. § 4472.

ownership, it appears Respondent lacked any actual notice of this violation and the context in which it first occurred. Thus, the Court concludes this factor weighs in favor of a lesser fine.

Fourth, this violation was noticed at the same time as the above-referenced residential violation. For the reasons set forth above, however, the Court lacks any evidence establishing that the residential violation occurred following the seven-day cure period. Additionally, as set forth herein, it is undisputed that Respondent was not the landowner responsible for this violation. Thus, Respondent's record of compliance weighs in favor of a modest fine.

Sixth[10], the Court finds the deterrent effect of a penalty of little import in this case. Again, Respondent did not undertake the enclosure of the deck. A penalty for a structural violation that Respondent did not commit but simply did not remedy either by destruction or after-the-fact permitting would have little deterrent effect here. Thus, this factor weighs in favor of a lesser fine.

Seventh, the Town has expended $31,890.30. While the Court understands that some of that cost was incurred related to the residential aspect of the NOV, discussed above, there is no reasonable way for the Court to parse out which bills relate to the deck enclosure only, which bills include matters related to both violations, and which bills relate solely to the residential violation.

Eighth, it is impossible for the Court to determine based on the facts before it and the circumstances of this violation how long it has existed. It is undisputed that the violation has occurred for more than 7 years. It may be possible that the violation occurred well beyond that time. Since the date of the NOV, the violation has occurred for 744 days.[11] This is a substantial amount of time and therefore would weigh in favor of a larger fine.

The Town requests a fine of $12 per day for this violation, running from the end of the cure period on August 21, 2023 to the last date of trial September 3, 2025, or 744 days. This amounts to $8,928 total fine for the deck enclosure. The Court finds this amount too large for the context of the deck enclosure violation. Respondent did not enclose the deck and the deck has been enclosed for nearly 7.5 years as of the day trial concluded. The Court believes it would be an abuse of discretion to impose such a penalty on Respondent based on these facts. This must be balanced, however, with the unappealed NOV establishing that the deck enclosure was a zoning violation and Respondent's failure

---

[10] Factor five of the Uniform Environmental Enforcement Act has been repealed. 10 V.S.A. § 8010(b)(5).

[11] Respondent argues that the entire Camp is now being used as a "farm structure" that is exempt from local zoning and the underlying zoning violation has been cured. The Regulations note that the "construction of farm structures" as defined by the Secretary of Agriculture are exempt from requiring a zoning permit. Here, Respondent argues that the structure became a "farm structure" only after the NOV was issued. Thus, it was not constructed as a farm structure and the is no allegation that the enclosure was done when the Camp was a farm structure. The after-the-fact change in use of the Camp, therefore, does not cure the structural violation.

to cure that violation in light thereof. Give the above factors, the Court believes a penalty of $5 per day for the 744 days of the violation is appropriate. This totals a $3,720 penalty for the violation period.[12]

In addition to monetary penalties related to the deck enclosure, the Town requests equitable remedies. Specifically, the Town requests a mandatory injunction requiring Respondent to cease and cure the deck enclosure without a permit. If any land is used in violation of any duly adopted bylaw, the Legislature mandated that the municipality bring "any appropriate action, injunction or other proceeding to prevent, restrain, correct, or abate that construction or use, or to prevent, in or about those premises, any act, conduct, business, or use constituting a violation." 24 V.S.A. § 4452.

The Court is concerned with granting injunctive relief related to this violation based on the record before us. This is in part because the Court lacks any understanding of when and/or who enclosed the deck. Any action to enforce a zoning violation must be brought within 15 years from the date that the alleged violation first occurred and not thereafter. See 24 V.S.A. § 4454(a). While the burden of proving the date that the alleged violation first occurred is on the alleged violator, see id., here Respondent, and the NOV is final and binding, the Court is presented with a situation where Respondent appears to lack knowledge of when this violation first occurred because it occurred prior to his ownership, more than 7 years ago at the very least. The Court therefore declines to grant the requested injunctive relief at the present time.

### Conclusion

For the foregoing reasons, the Court imposes a $5 per day fine, running from August 21, 2023 to September 3, 2025 (744 days) for a total fine of $3,720, with such fines constituting a lien upon the

---

[12] As further explained below, the Court has concerns that it lacks evidence as to whether the deck enclosure has existed for more than 15 years thereby baring penalties. It is Respondent's burden, however, to prove the date the violation first occurred. 24 V.S.A. § 4454(a). Respondent has not proven this date either in this appeal or in an appeal of the NOV. The imposition of a fine in this amount therefore represents a balancing of the Court's general concern about the lack of evidence of this fact along with the final and binding NOV establishing this violation.

8

Property.  This fine relates to the deck enclosure only.  The Court imposes no injunctive relief as it relates to this violation.  The Court imposes no fine or relief related to the residential violation.

This concludes the matter before the Court.  A Judgment Order accompanies this Decision. Electronically singed this October 28, 2025 pursuant to V.R.E.F. 9(D).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division