VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 25-ENV-00021



| | |
|---|---|
| Stowe Country Club LLC DRB         Preliminary Subdivision Approval | **DECISION ON MOTIONS** |

Before the Court are cross-appeals of a March 4, 2025 decision of the Town of Stowe (Town) Development Review Board (DRB) denying an application for preliminary subdivision/planned unit development (PUD) review submitted by Stowe Country Club, LLC (Applicant) related to land Applicant owns off of Cape Cod Road, Vermont (the Property). Applicant appealed that decision to this Court. Subsequently, neighbor Debra S. Reiser and the Stoweflake Townhouse Condominium Owner's Association (together, Neighbors) filed a cross appeal.

In a September 17, 2025 Entry Order denying Applicant's motion to strike Meadows at Stoweflake III Owner's Association, Inc. (Meadows), the Court gave Meadows until October 17, 2025 to either file a motion for leave to be represented by a non-attorney or retain counsel and have said attorney file a notice of appearance on its behalf by the same date. See In re Stowe Country Club, LLC DRB Preliminary Subdivision Approval, No. 25-ENV-00021 (Vt. Super. Ct. Envtl. Div. Sept. 17, 2025) (Walsh, J.). No such filings were made and, therefore, Meadows is **DISMISSED**.

This matter is an on-the-record appeal. Despite this, the parties have stipulated that aspects of the cross-appeals may be ripe for summary judgment. Cross-motions for summary judgment filed by Neighbors and Applicant are presently before the Court. While this procedural posture is somewhat unconventional in the context of an on-the-record review, the Court notes that similar motions have been filed before. See In re Appeal of J.D. Assoc's, No. 2002-109 (Aug. Term 2002) (unpublished mem.) (affirming a decision of this Court whereby parts of the on-the-record appeal were resolved by summary judgment and some were resolved by on-the-record briefing).

In this matter, Applicant is represented by Christopher D. Roy, Esq. Neighbors are represented by James A. Dumont, Esq. The Town is represented by David W. Rugh, Esq. and Beriah C. Smith, Esq. Five Roads Stowe, LLC, an interested party that has not submitted filings related to the motions, is represented by Elizabeth Conolly, Esq. Finally, Sheri Baraw Smith, Caleb Connerty,

Charles C. Stevenson, and Jonathan Thomas are interested persons who are all self-represented. None of these self-represented parties submitted any filings relative to the pending motions.

## Legal Standard

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). When considering a motion for summary judgment, the nonmoving party receives the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356. When considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. In determining whether there is a dispute over any material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted); V.R.C.P. 56(c)(1)(A).

## Factual Background

We recite the following facts solely for the purposes of deciding the pending cross-motions. These facts do not constitute factual findings because factual findings cannot occur until after the Court conducts trial. Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.).

1. Applicant Stowe Country Club owns property along and near Cape Cod Road in Stowe, Vermont (the Property).

2. The Property is located in both the Rural Residential (RR) 2 (RR2) and RR3 zoning districts as those terms are defined by the Town of Stowe Zoning Regulations (the Regulations), effective January 1, 2024. See Exhibit B.

3. Applicant presently uses the Property as a private golf club with associated amenities and structures.

4. On February 22, 2025, Applicant applied for preliminary approval for a mixed-use Planned Unit Development (PUD) and preliminary subdivision/PUD approval related to the relocation and expansion of the golf course and associated amenities, such as a new clubhouse and recreational amenities, and 73 new residential dwelling units, consisting of a mix of single-family, duplexes, and multi-family units.

5. The DRB sent a Notice of Public Hearing for an initial hearing in April 2024. See Stip. Exhibit (Hearing Notice).

6. The Hearing Notice stated that the DRB was holding a hearing in April 2024 on Applicant's request for preliminary subdivision/PUD review including a club house, recreational amenities, and residential uses at the Property. Id. The notice further indicated that additional application materials related to this application could be found at the Town's zoning office or online.

7. The DRB held hearings on this matter from April 2024 through February 2025.

8. Neighbors received some form of notice and attended all or a portion of those hearings.

9. The application initially proposed to be served by municipal water service but during the course of the DRB heaving process, Applicant amended the application to propose service by private water.

10. Applicant did not submit updated water reports and/or documents related to the newly proposed private water system.

11. The DRB did not approve a private water system for the application.

12. The DRB issued its decision denying the application on March 4, 2025.

13. Applicant and Neighbors filed appeals thereof.

## Discussion

Neighbors and Applicant each move for summary judgment, albeit on different Questions within their respective Statements of Questions. Neighbors motion seeks judgment on Neighbors' Questions 1, 2 and 3 of Neighbors' Statement of Questions. See Cross-Appellants' Statement of Questions (filed May 7, 2025). Applicant moves for judgment on Questions 1, 3 and 5 of Applicant's Statement of Questions. See Applicant Statement of Questions (filed Apr. 18, 2025).

### I.     Neighbors Questions 1 and 2: Notice

Neighbors Questions 1 and 2 concern notice.[1] Neighbors assert first that Applicant did not properly notifying adjoining landowners and should have served amended hearing notice once Applicant determined it would not rely upon municipal water and instead will rely upon private water sources. Both arguments must fail.

Neighbors lack standing to raise these issues on behalf of third parties not before the Court. See Baird v. City of Burlington, 2016 VT 6, ¶ 15 ("[A] party who is not injured has no standing to bring a suit.") (quotation omitted). It is undisputed that Neighbors participated in the hearings below and raised their concerns with the project, including the potential shift from municipal water service

---

[1] A portion of Neighbors' Question 2 appears to go beyond notice and it is discussed below.

to private water service. They have therefore failed to identify how they personally have been injured in light of this.

Despite this, Neighbors assert they have standing under the principles set forth in Craig v. Boren, 429 U.S. 190 (1976), and Griswold v. Connecticut, 381 U.S. 479 (1965). The Court fails to see the applicability of Craig and Griswold to these circumstances. In fact, the facts, circumstances and law at issue in both Craig and Griswold, leading to the U.S. Supreme Court's conclusion that relevant plaintiffs maintained standing to bring suit on behalf of third parties, appear to the Court to be uninstructive and inapplicable in the present context.[2] In both cases, the Supreme Court found, in part, an exception to the standard third-party standing prohibition where a dilution of the right to pursue, ultimately successful, claims that relevant law violated rights protected by the U.S. Constitution. Here, Neighbors argue that the "dilution" supporting their standing here is the "number of voices, and content of the voices" opposing the Project has been impaired and diluted by the lack of service. Functionally, they assert that opposition would have been more robust if service were made by alternative means. This is clearly not the dilution and impairment contemplated by Craig or Griswold and their ability to raise these issues on behalf of those not before the Court remains barred by Baird.[3]

The notice cannot further be deemed to be "materially misleading" such that the action should be invalidated because the water source for the project was amended during the DRB process. First, the permit application below was denied. It is unclear to the Court why Neighbors, who oppose this Project, would seek a ruling from this Court invalidating the denial. The Court, however, does recognize that aspects of the below decision concluded that portions of the project complied with the

---

[2] In Craig, an alcohol vendor brought suit alleging that an Oklahoma law prohibiting the sale of certain alcohol to males between the ages of 18 and 20 constituted gender discrimination. Craig, 429 U.S. 190. The U.S. Supreme Court concluded that the vendor had standing to bring the claim, despite not being a member of the discriminated class because failure to bring the suit would materially impair the ability of those in the class to purchase this alcohol despite the clear gender-based criterion. Id. at 196. Further, the Craig Court noted that the relevant law at issue prohibited the sale of the alcohol, not the use/consumption of it and such "a vendor [w]as the obvious claimant." Id. at 197. In Griswold, an executive at the Connecticut chapter of Planned Parrent and a licensed physician who worked in a Planned Parenthood clinic brought suit against Connecticut concerning two provisions of Connecticut law, one of which prohibited the use of contraception and criminalized the act. Griswold, 381 U.S. at 480. The other criminalized the act of assisting and/or counseling another to commit an offence as the principal offender. Id. Plaintiffs were each arrested and found guilty of violating the latter statute. They brought suit alleging that the statutes violated the constitutional rights of married people with whom they had a professional relationship despite not being a member of the directly injured class themselves. The U.S. Supreme Court noted that "[c]ertainly the accessory should have standing to assert that the offense which he is charged with assisting is not, or cannot constitutionally be a crime." Id. at 481. The Court does not extend these reasonings to the present circumstances.

[3] Because we conclude that Neighbors lack standing to raise these issues on behalf of others, we need to address the sufficiency of Applicant's attempts to serve other property owners.

4

relevant Regulations. Further, and again, it undisputed that Neighbors attended the hearings and learned of this amendment and were able to provide their comments on this issue.[4] Because of this, they have presented no assertion of injury on their behalf based on the notice and they lack standing to assert this matter either on behalf of themselves or on behalf of others not before the Court.

While Neighbors moved for summary judgment on their Question 1 and its corresponding subparts, because the Court concludes they lack standing to raise these issues, the Court must **DISMISS** Questions 1 and 2 sua sponte for lack of subject matter jurisdiction. See V.R.C.P. 12(h)(3); see also Brod v. Agency of Nat. Res., 2007 VT 87, ¶ 8, 182 Vt. 234 (recognizing that standing was a component of subject matter jurisdiction) (citations omitted). Because the Questions are dismissed, Neighbors' motion with respect to these Questions as they relate to notice is moot.

In Neighbors' motion for summary judgment, apparently on Question 2, they appear to assert that the application must be denied and any approval overturned because Applicant did not provide certain information to the DRB about the private water system when it amended its project to have such service as opposed to public water service.[5] First, and again, the DRB decision on appeal is a denial. There is no approval to overturn. Neighbors, through this aspect of Question 2, seek this Court to affirm that denial, but on grounds not reached by the DRB below in addition to, at least some of, the grounds that the DRB did reach. What's more, a review of the DRB's decision indicates that the DRB did not make any final conclusion on any private water supply for this project. A review of the below decision appears at least in part to have been denying the application with recognition to the deficiency cited and the prospect that a new preliminary application could be forthcoming. Applicant has not appealed that conclusion or lack thereof.

Additionally, Applicant does not dispute that this information was not provided following amendment of its potential proposal. Instead, they recognize that they will need to submit a new application for preliminary subdivision/PUD approval following the resolution of the issues in this

---

[4] What's more, the Court has concerns with Neighbor's assertions in this regard. The notice referenced the Project, generally, and directed to the application. Initially the application proposed municipal water connection. Over the course of the process, Applicant shifted to a proposed private water source. It is common in land use permitting processes for applications to be amended partially over time to respond to issues that arise during the DRB review process. Here, the bulk of the project: a mixed-use development consisting of a residential development remained the same and only the water source changed. To conclude that this amendment resulted in the hearing notice being materially misleading would be to foreclose the ability of applicants to respond to commentary by municipalities and neighbors over the course of the permitting process and create inefficiencies in this process. This conclusion is further supported by the fact that, as discussed below, Applicant concedes a new preliminary permit application is required which would include the private water source.

[5] The Court notes that in some respects this argument is interwoven with Neighbors' arguments related to notice. To the extent they are separate from that argument, the Court addresses it here.

case.  Notably, Applicant recognizes that any subsequent application would be for <u>preliminary</u> approval, not <u>final</u> approval, as Neighbors assert in their sur-reply.[6]  The application below was denied and Applicant on appeal does not appear to seek any approval of the private water system, nor could the Court likely grant such approval in this instance light of the facts and decision below.

Thus, Neighbors have not demonstrated to this Court how this issue is ripe for review in this appeal.  Instead, the facts and representations indicate that this issue (i.e., the application's completeness due to a lack of information related to the water supply) was not decided below in part because of other denials and an understanding that a new preliminary application would be forthcoming.  Thus, this aspect of Question 2 must be **DISMISSED** sua sponte for lack of subject matter jurisdiction. See V.R.C.P. 12(h)(3); see also <u>In re Snowstone, LLC Stormwater Discharge Authorization</u>, 2021 VT 36, ¶ 28, 214 Vt. 587 (noting the prohibition on advisory opinions); see also <u>Baker v. Town of Goshen</u>, 169 Vt. 145, 151—52 (1999) (noting that issues presented on appeal "must be a necessary part of the final disposition of the case to which it pertains.") (citation omitted).

## II.    Neighbors Question 3: Character of the Area

Neighbors Question 3 addresses whether the DRB erred in concluding that a double setback was not required to preserve the character of the area.  The motion both attacks the findings the DRB made and the basis for the legal conclusions.

There are genuine disputes of material fact that preclude summary judgment on this issue.  First, the parties dispute the types of homes that are within the 100-foot setback area.  Applicants further assert that there is additional evidence in the record of this on-the-record appeal that has not been cited by Neighbors in their motion that further creates a genuine dispute of material fact precluding summary judgment and supporting its assertion that the project would not have an undue adverse impact on the character of the area.

Further, resolution of this issue poses reviewing the factual record before the Court and legal analysis as to the overarching compliance with the Regulations.  While it's true that in on-the-record matters summary judgment has been used in the past, the Court struggles to see how such an issue is ripe for adjudication on summary judgment within the context of an on-the-record appeal and with consideration to the standards that we must apply when reviewing the merits of the DRB's decision.

---

[6] It is for this reason that <u>In re Carroll</u>, 2007 VT 19, 181 Vt. 383, and its progeny of cases is not compelling in this context.  Those cases concerned an appeal of subdivision permits in the context of preliminary and then final approvals.  Here, Applicant concedes that, depending on the outcome of this case, the next step in its development plan for this property is not final subdivision/PUD approval but instead a new <u>preliminary</u> subdivision application that would address the private water proposal, should it seek to pursue that option.

To apply solely the summary judgment standards to this issue would appear to abrogate the standard we are directed to apply in this appeal and would limit this Court's review of the entirety of the record to determine if the DRB's factual findings are sufficient in this on-the-record appeal. Thus, Neighbors' motion with respect to Question 3 is **DENIED**.

### III. Applicant Question 1: Setback Constitutionality

Applicant challenges the constitutionality of the privacy-related provision of the setback waiver analysis set forth in the Regulations. Prior to addressing the merits of this assertion, Neighbors assert that this argument and Question was not preserved because Applicant did not expressly raise it to the DRB below.

Neighbors overstate the standard of review in an on-the-record appeal. They argue that this Court does not rule upon arguments that were not raise before the DRB. In so asserting, Neighbors point to general rules of appellate practice and the general principles that, in certain circumstances, the Court will review an appropriate municipal panel's legal conclusions deferentially.[7]

An overly strict preservation ruling on this issue makes little sense. As Applicant correctly points out, the DRB lacks the authority and jurisdiction to rule upon the constitutionality of the Regulations and, instead, this Court is the proper forum to hear that appeal. See Weston v. Vill. Of Barton Elec. Dep't, 149 Vt. 356, 359 (1988). Thus, putting aside whether Applicant properly raised this issue below, the Court fails to see how failing to do so could preclude them from raising the argument with the only proper forum on appeal when the DRB would have been without authority to rule upon the matter. The proffered preclusion argument places form well above substance and would functionally preclude or significantly stymie any party, applicant or interested person, from raising constitutional concerns in on-the-record towns.

Thus, the Court concludes the constitutional question is properly before us. We therefore turn to the constitutionality of Regulations § 13.3(A)(1).

Regulations § 13.3(A) sets a setback that is double of what is required in the applicable zoning district for PUDs. The DRB, however, may grant a waiver when three criteria are met. Applicant

---

[7] They further assert that Applicant's failure to comply with V.R.A.P. 28, which concerns Supreme Court briefing contents related to preservation of arguments, must also preclude the argument. While the Court in Miller recognized that it is appropriate for parties to file briefs that conform to V.R.A.P. 28(a)(1) through (4), See In re Miller CU Application, No. 59-3-07 Vtec, slip op. at 6—7 (Vt. Super. Ct. Envtl. Div. Nov. 5, 2007) (Durkin, J.), and putting aside whether Applicant has complied with that rule, generally, the Neighbors fail to connect this rule to V.R.C.P. 56, pursuant to which the motion is before the Court. Put simply, there is no "brief" before the Court, there is a motion for summary judgment. This confusion, coupled with that discussed above with respect to Neighbors' Question 3, might underscore why motions for summary judgment, theoretically possible in on-the-record cases, may ultimately pose more consternation than simply waiting for a complete record and briefing the matter as typically done in an on-the-record case.

challenges the constitutionality of the first criterion, set forth in Regulations § 13.3(A)(1), and asserts it is void for vagueness. Regulations § 13.3(A)(1) requires the DRB to find that:

> The double setback is not found necessary to protect the privacy of neighboring properties due to topography, existing vegetation to remain, proposed landscaping or other mitigation measures being proposed by the applicant.

Regulations § 13.3(A)(1).

"Zoning ordinances must 'specify sufficient conditions and safeguards' to guide applicants and decisionmakers." In re Appeal of JAM Golf, LLC, 2008 VT 110, ¶ 13 (citing Town of Westford v. Kilburn, 131 Vt. 120, 122 (1973). A statute or, here, regulation, will not be upheld when it "'fail[s] to provide adequate guidance,' thus leading to 'unbridled discrimination' by the court and the planning board charged with its interpretation." Id. (quoting Kilburn, 131 Vt. at 125) (additional citations omitted).

In JAM, the Vermont Supreme Court analyzed a provision of the South Burlington zoning regulations requiring projects to "protect important natural resources including streams, wetlands, scenic views, wildlife habitats and special features such as mature maple groves or unique geologic features." Id. at ¶ 12. The Supreme Court concluded the use of "protect" alone was insufficient to provide an understanding of what level of preservation for the identified resources was sufficient under the applicable regulations and the regulations were silent on that issue. Id. at ¶ 14. The Court noted that the regulations "provide[d] no guidance as to what may be fairly expected from landowners who own a parcel containing" the cited landforms. Id.

The provision at issue here is distinguishable from that at issue in JAM. First, the word "privacy" while not defined by the Regulations, is subject to a typical dictionary definition to guide in interpretation. See In re Tyler Self-Storage Unit Permits, 2011 VT 66, ¶ 18, 190 Vt. 132. "Privacy" is defined as "[t]he quality, state, or condition of being free from public attention to intrusion into or interference with one's acts or decisions." Black's Law Dictionary, "Privacy" (12th ed. 2024). Another similar definition states it is "the quality or state of being apart from company or observation." Merriam-Webster, "Privacy" (www.merriam-webster.com/dictionary/privacy). Thus, "privacy" is readily definable by its plain and ordinary usage as set forth in readily available dictionaries.

Further, the Regulations explicitly provide for consideration of characteristics that may limit the need for the double setback and the protection of privacy discussed therein. Specifically, it directs the DRB to consider "topography, existing vegetation to remain, proposed landscaping or other mitigation measures being proposed by the applicant." Regulations § 13.3(A)(1). These characteristics

go into the analysis of whether or not the double setback is needed at all to "protect" privacy. While there may be some subjective disagreements about what may meet these criteria, it does not provide for standardless discretion as discussed in JAM and sets forth criteria for review under this provision. Thus, we conclude that § 13.3(A)(1) is not void for vagueness. We **DENY** Applicant's motion for summary judgment on this Question.

### IV.    Applicant Questions 3 and 4: Allowable Uses

Regulations § 13.3(3)(F) states that "in a PUD that spans more than one zoning district, the DRB has the authority to assign the allowed density anywhere within that project area. However, with the exception of Ski-PUDs and Resort PUDS, only residential uses shall be permitted in residential districts." The DRB interpreted this provision as limiting PUDs that span multiple zoning districts, where one of those districts is residential, to solely traditionally residential uses (i.e., residences) and prohibiting non-residences from being included in the PUD despite those uses being otherwise acceptable in the underlying residential zoning district.

When interpreting a zoning ordinance, the Court's goal is to effectuate the intent of the drafters, first by looking to the plain meaning of the regulation at issue and the "whole of the ordinance." Tyler Self-Storage, 2011 VT 66, ¶ 13 (quotation omitted). In construing statutory or ordinance language, our paramount goal is to implement the intent of its drafters. Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 7, 178 Vt. 29. We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Laberge MotoCross Track, 2011 VT 1, ¶ 8, 189 Vt. 578; see also In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49, 195 Vt. 586 (1986)) ("Our goal in interpreting [a zoning regulation], like a statute, 'is to give effect to the legislative intent.'"). Moreover, we will not interpret zoning regulations in ways that lead to irrational results. See Stowe Club Highlands, 164 Vt. 272, 280 (1995) (refusing to interpret regulation such that it leads to irrational results). Finally, because zoning regulations limit common law property rights, we resolve any uncertainty in favor of the property owner. Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22. With these provisions of interpretation in mind, we turn to the applicable regulatory and statutory provisions.

Regulations § 13.3(F) is ambiguous as it relates to split-lot PUDs in which one of the lots is residential.[8]  This subsection concerns allocation of density across a multi-district PUD, discussed below.  The first sentence concerns the DRB's authority to allocate density to any portion of the project area even though the PUD spans one or more district.  It specifically does not limit uses but gives the DRB the authority to allocate density without consideration for the beginning or end of a zoning district.  The exception being for residential zoning districts.  "Residential uses" is not defined by the Regulations and a reference to the residential zoning districts demonstrates a series of uses that have been deemed compatible, at various standards of review, with a residential zoning district.  Given the lack of definitional assistance in the Regulations and when considering § 13.3(3)(F) as a whole, this clause is ambiguous. We must resolve that ambiguity in favor of Applicant and conclude that this provision clarifies that, when a PUD spans multiple zoning districts and one of those districts is a residential zoning district, the uses allowable in the portion of the lands within the residential zoning district are only those allowable in that residential district.

This interpretation also provides consistency within the subsection in which this provision is located.  Indeed, it makes sense for a PUD that spanned, for example, a RR district and a commercial district, such as the Village Commercial or Lower Village Commercial and Moscow Commercial districts, in which significantly more commercial uses, of varying scales, are permitted.   In such an instance, it makes sense that the DRB be directed to ensure that only uses allowable in the residential district be allocated to that portion of the project area and, to the extent that any uses were proposed that would not be allowable in the portion of the project within a residential district, those uses do not get sited in the residential zoning district.[9]

Thus, we conclude that §13.3(3)(F) provides that when a PUD spans multiple zoning districts and one of those districts is a residential zoning district, the uses allowable in the portion of the project within the residential zoning district are only those allowable in that residential district.  It does not limit the uses in a PUD spanning multiple districts and including a residential zoning district to

---

[8] Because the Court concludes that the provision is inherently ambiguous within the context of its own subpart, the Court does not interpret the Regulations as being inherently in conflict, requiring the Court to  apply the specific over the general.  See In re Pederzani, 2024 VT 82, ¶ 12.

[9] The DRB's lower interpretation is further illogical when considering the facts of the present application.  The PUD on appeal spans two residential zoning districts with nearly identical permitted and conditional uses with the sole differences wholly irrelevant here. See Regulations 6.1. While technically the application spans two districts, those districts allowable uses present a distinction without a difference in the context of the pending application.  It makes little sense to wholly foreclose all otherwise generally allowable PUD uses in this context.

residences only. Thus, we **GRANT** Applicant's motion for summary judgment on Question 3 and answer it in the affirmative.

Question 4 addresses whether the golf club, a pre-existing use that Applicant seeks to include with the PUD may be allowed within the PUD because it is pre-existing despite its non-residential nature. The Court believes the majority of Question 4 is mooted by the above conclusion because the Court concludes that the multiple-district status of the PUD does not preclude non-residential uses allowable in the underlying residential zoning district. Further, the DRB noted that "except for the existing uses" all <u>newly proposed</u> uses in the PUD would be limited to residential, unless Applicant sought a different form of PUD status. See DRB Decision, p. 41. Neighbors do not dispute this conclusion and the Town recognizes that the golf club use, general, is a lawful preexisting use.[10] Thus, it does not appear to be in dispute that the preexisting non-residential uses at the Property may continue, and Applicant's motion with respect to Question 4 is **GRANTED** and Question 4 may generally be answered in the affirmative.

## Conclusion

For the foregoing reasons, we **DENY** Neighbors' motion with respect to Neighbors' Question 4. The Court concludes that there are material facts in dispute preventing judgment on Neighbors' Question 4. With respect to Questions 1 and 2, we conclude that Neighbors lack standing to raise the issues within both Questions 1 and 2 and therefore we **DISMISS** both Questions sua sponte and their motion for summary judgment on these Questions is moot..

The Court **DENIES IN PART AND GRANTS IN PART** Applicants' motion. In so doing, with respect to Question 1, the Court concludes that Regulations § 13.3(A)(1) is not void for vagueness, and therefore we **DENY** Applicant's motion. We find that the material facts are not in dispute and Applicant is entitled to judgment as a matter of law on Applicant's Questions 3 and 4 and **GRANT** Applicant's motion with respect to those Questions. In so doing, with respect to Question 3, we conclude that Regulations §13.3(3)(F) provides that when a PUD spans multiple zoning districts and one of those districts is a residential zoning district, the uses allowable in the portion of the project within the residential zoning district are only those allowable in that residential district. With respect to Question 4, it further does not appear to be in dispute that the preexisting non-residential uses at the Property may continue.

---

[10] The Town asserts, however, that any <u>new</u> use must be residential, which is consistent with the DRB's decision below and/or based on the above conclusion, any new non-residential use in the PUD would require additional review to be allowable in a PUD under § 13.3(2)(B).

11

Meadows at Stoweflake III Owner's Association, Inc. is **DISMISSED**.

The Court will set this matter for a status conference to discuss how to best proceed to resolution in this case, including a timely briefing schedule.

Electronically signed November 25, 2025 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division